BUSH TERMINAL BUILDINGS Co., et al., Plaintiffs, v. LUCKENBACH STEAMSHIP Co., INC., Defendant and Third-Party Plaintiff-Appellant. ATLANTIC SHIP RIGGING Co., INC., et al., Third-Party Defendants-Respondents.

First Department, July 5, 1960.

*William M. Kimball* of counsel (*Hervey C. Allen* and *John S. Rogers* with him on the brief; *Burlingham, Hupper & Kennedy*, attorneys), for appellant.

*J. B. Sheftel* of counsel (*Joseph J. Corn, Jr.*, with him on the brief; *Eisman, Lee, Corn, Sheftel & Bloch*, attorneys), for H. Muehlstein & Co., Inc., respondent.

BREITEL, J. Defendant Luckenbach appeals from an order dismissing its cross claims against defendants Atlantic and Muehlstein as legally insufficient. Involved on the appeal is the much litigated question of the right to indemnity based on distinctions between " active " and " passive " negligence, or, better, between primary and secondary negligence.

Plaintiffs sue for property damages resulting from a fire and explosion at the Luckenbach steamship pier. Luckenbach had engaged Atlantic to repair some equipment. In the course of the work, Atlantic used oxyacetylene torches. Sparks or molten metal from the torch work ignited rubber scrap which had spilled from insecurely packed burlap bags delivered to the pier for shipment by Muehlstein. The fire spread rapidly to Primacord or detonating fuses in the vicinity and the explosion followed.

The original or prime complaint alleged that Luckenbach had full knowledge that the rubber scrap was scattered about the pier or should have had such knowledge in the exercise of reasonable care. It also alleged that Atlantic was using the torches with the knowledge and consent of Luckenbach and that Luckenbach knew, or in the exercise of reasonable care should have known, of the inherent danger in the torch operations. It further alleged that Luckenbach took no action to stop the operations and negligently stored the combustible rubber scrap and explosives in the vicinity. The complaint also alleged, in substance, that Luckenbach knew, or was chargeable with knowledge, that the pier-stored rubber scrap and explosives were combustible and explosive.

Luckenbach's answer, as amended, contained two cross claims against Atlantic and two cross claims against Muehlstein. It alleged that both Atlantic and Muehlstein had been guilty of

" primary, active and affirmative negligence " and sought recovery from each of them based on implied rights of indemnity. The answer also alleged that Atlantic had expressly agreed to indemnify Luckenbach for all losses resulting from Atlantic's breach of the contract to repair the equipment. The answer also alleged that Muehlstein had expressly agreed to indemnify Luckenbach for all losses resulting from Muehlstein's breach of the contract of carriage.

Special Term held that the prime complaint did not contain any allegations of " passive " negligence on the part of Luckenbach, and therefore dismissed both cross claims based on implied rights of indemnity. The cross claim against Muehlstein based on the express contract of indemnification was dismissed on the ground that the contract covered only damages to ship and cargo. The cross claim against Atlantic based on the express contract of indemnification was also dismissed (but with leave to replead) on the ground that there was a dispute as to the terms of the contract, which contract was not before the court.

The principles in the field are sometimes difficult to apply. Since it appears, however, that, as among the defendants, either Muehlstein or Atlantic, or perhaps both of them, may be primarily responsible for the accident, the two cross claims of Luckenbach based on implied rights of indemnity should be sustained as legally sufficient. The two cross claims based on the express contracts of indemnity were properly dismissed (but there should be leave to replead as to both) on the ground that in neither cross claim has Luckenbach alleged facts establishing that either Atlantic or Muehlstein undertook to indemnify Luckenbach for its own wrongful acts.

Under current terminology, apart from an express contract of indemnity, a defendant guilty of " active " negligence may not claim over against another who has also wrongfully contributed to the accident. The most such a defendant may obtain is the right to look to the other for contribution upon payment of more than a prorata share of a joint judgment (Civ. Prac. Act, § 211-a; *Fox* v. *Western N. Y. Motor Lines*, 257 N. Y. 305). What this really means is that if two or more joint tort-feasors, by their respective wrongful conduct, concur in producing the accident, and no one owed any " independent duty or obligation " to another of the joint tort-feasors (see *McFall* v. *Compagnie Maritime Belge*, 304 N. Y. 314, 331) to prevent the accident to the injured plaintiff, then no implied right of indemnity arises among the tort-feasors, *inter se.*

A defendant guilty merely of "passive" negligence, however, may claim over against another who is guilty of "active" negligence. In so doing, such a defendant does not sue directly for the damages sustained by the injured party as the result of the accident. Rather, he obtains indemnity for the damages, in terms of the liability he has sustained by reason of his satisfaction of plaintiff's direct damages. Thereby the ultimate burden of his own responsibility (i.e. liability) to the prime plaintiff is shifted to the one who owed him a duty to prevent the accident and — thus also to prevent the liability incurred to the prime plaintiff.

Such defendant is permitted to do this because as between himself and the other defendant, the other is primarily responsible (*Wischnie* v. *Dorsch,* 296 N. Y. 257; *Phœnix Bridge Co.* v. *Creem,* 102 App. Div. 354, affd. 185 N. Y. 580; Restatement, Restitution, §§ 94, 95). The claim over is permitted on the ground that the public policy against granting relief to a person *in pari delicto* is not violated. Put still another way, although the third-party defendant has breached a duty to the prime plaintiff for which it is liable to him, it has also breached an "independent" duty to the third-party plaintiff which breach occasioned damage to the third-party plaintiff to the extent that the latter was cast in damages in favor of the prime plaintiff.

All students of the subject do not agree that the implied right to indemnity stems from a duty owed by the indemnitor to the indemnitee (see, e.g., n.: Contribution and Indemnity Among Tort-feasors in Minnesota, 37 Minn. L. Rev. 470, 475 *et seq.*; Davis: Indemnity Between Negligent Tort-feasors, 37 Iowa L. Rev. 517, 545–546). But it would seem, in the simplest terms, that the "right" to indemnity must be posited on a "duty" owned to the indemnitee. True, at this point one must avoid begging the question and go on to consider the underlying fact relationships which the courts recognize as creating the implied duty (see Leflar, Contribution and Indemnity Between Tort-feasors, 81 Univ. of Pa. L. Rev. 130, 146 *et seq.*; Davis, *op. cit.,* 37 Iowa L. Rev. 517). These relationships do not fall into easily defined categories, but there is no reason why they should.

In many cases it is quite easy to determine whether a defendant has been charged with, or is guilty of, negligence which will debar or allow an implied right to indemnity from a joint tort-feasor. Thus one finds little difficulty in sustaining a claim by the master against his servant where the master has been held liable to plaintiff, solely on the basis of *respondeat superior,* and the servant alone committed the wrongful act for which the

master has suffered liability to the prime plaintiff (*Opper* v. *Tripp Lake Estates*, 274 App. Div. 422, affd. 300 N. Y. 572; Restatement, Restitution, § 96). Similarly, one finds little difficulty in denying the claim over of the party whose own wrongful conduct has directly contributed to the injury of the prime plaintiff, and there has been no breach of duty as between the party seeking indemnity and the party against whom indemnity is sought. The injury sustained by a passenger or pedestrian caused by the concurring negligence of two drivers is a good example. Neither driver may claim over against the other (e.g., *Sarna* v. *Davis*, 280 App. Div. 632; Restatement, Restitution, § 102; cf., *Balch* v. *Richby Realty Corp.*, 4 A D 2d 864, affd. 4 N Y 2d 1006).

Many difficulties, nevertheless, arise, and for two reasons. First, when the question arises on the pleadings and before trial, there are difficulties in interpreting the allegations of the complaint. The pleader (prime plaintiff) is hardly concerned with the problem among the defendants, *inter se*, and no effort is made to categorize the allegations to assist in the solution of the problem of liability among them.

The second reason for difficulty, and the more basic one, stems from the uncertain applicability of the substantive law. Even when the evidentiary facts have been ascertained, there is often uncertainty as to whether indemnification is appropriate, especially where the right depends partly upon the weighing of the " comparative culpabilities " among different kinds of wrongdoing (see *O'Dowd* v. *American Sur. Co. of N. Y.*, 3 N Y 2d 347, 354). This, then, is no measuring of degrees of negligence as is done under the doctrine of comparative negligence, but is a " comparison " of " kinds of wrongdoing " in determining whether joint tort-feasors are *in pari delicto*.

The uncertainty is compounded by the terminology. The word " passive " ordinarily denotes a lack of action, but there are situations where, as a substantive matter, a defendant, who has failed to act when he ought to, may not obtain indemnification (*Putvin* v. *Buffalo Elec. Co.*, 5 N Y 2d 447, 456).

For example, it has been held that a defendant who did not create the condition causing the injury, and who had only " constructive " knowledge of its existence, may obtain indemnity from the defendant who created the condition. The failure to discover the condition, apparently no matter what degree of fault may be involved in the failure, is deemed " passive " negligence (*Employers' Liab. Assur. Corp.* v. *Empire City Iron Works*, 7 A D 2d 1012, 1013; *Ruping* v. *Great Atlantic & Pacific Tea Co.*, 283 App. Div. 204; cf. *O'Dowd* v. *American Sur. Co. of*

*N. Y.*, 3 N Y 2d 347, 354, *supra*; *Sobel* v. *City of New York*, 9 A D 2d 271, 278; but, see, *Dolnick* v. *Edward Donner Lbr. Corp.*, 275 App. Div. 954, affd. 300 N. Y. 660; *Crawford* v. *Blitman Constr. Corp.*, 1 A D 2d 398, 401; *Falk* v. *Crystal Hall*, 200 Misc. 979, 985, affd. 279 App. Div. 1071, motion for leave to appeal denied 304 N. Y. 987; Restatement, Restitution, § 86). Where, however, a party has acquired actual knowledge of the condition and fails to correct it, he may be denied indemnity even though his conduct was " passive ", using the word in its ordinary sense, meaning an " omission " or a failure to take action which would have avoided the accident. (*Adler* v. *Tully & Di Napoli*, 300 N. Y. 662; *Brady* v. *Weiss & Sons*, 6 A D 2d 241, 243–244; *Meltzer* v. *Temple Estates*, 203 Misc. 602; *Campanelli* v. *Kretzer & Son*, 22 Misc 2d 852, mod. 1 A D 2d 1025; *Baltimore & Ohio R. R. Co.* v. *Alpha Portland Cement Co.*, 218 F. 2d 207 [C. C. A. 3d]; Restatement, Restitution, § 95; cf. *Secor* v. *Levine*, 273 App. Div. 899.)

So it is that the decisive issue as between the defendants is not necessarily whether the conduct of the defendant seeking indemnity constituted a fault of omission or an act of commission. In most cases it is not. Nor, when one considers the reasons for the rule against contribution among joint tortfeasors, should this be so. A failure to discover, or other fault of omission, may involve a greater degree of wrongdoing than a negligent act of commission (*Tipaldi* v. *Riverside Mem. Chapel*, 273 App. Div. 414, 418 *et seq.*, affd. 298 N. Y. 686). And, in such a situation indemnification of the party who committed the fault of omission by the party who committed the act of commission should not be permitted. Or, the " passive " one, by long acquiescence in a condition created by the " active " one, may be debarred from indemnity, because the long acquiescence denies reliance on the " active " one. Otherwise, the strong policy against granting relief to the wrongdoer *in pari delicto* would be violated.

The truth of the matter is that to describe the nature of the wrong as " active " or " passive " negligence is merely to state a conclusion (in misleading terms), rather than a premise. The epithets conclude the analysis rather than progress the reasoning required to reach a conclusion. (For a critique of the " active-passive " terminology, see 1952 Report of N. Y. Law Rev. Comm., pp. 21–63, especially pp. 53–55; note that Restatement does not use such terminology, see Restatement, Restitution, §§ 76–102; note that Prosser, however, does make reference to it, but confines its scope, see Prosser, Torts [2d ed.], p. 251; Indemnity among Tort-feasors in New York, 39 Corn,

L. Q. 484, 499; Indemnity Among Joint Tort-Feasors in New York, 28 Fordham L. Rev. 782, 786 *et seq.*; see, also, Meriam and Thornton, Indemnity Between Tort-Feasors, 25 N. Y. U. L. Rev. 845, especially pp. 858–859.)

The most serious difficulty with the "passive-active" terminology is that it can be manipulated to produce any result. One need only enlarge the definition of the act of the actor to make it "active", while by reducing the definition one can make the act "passive". Concrete illustrations will show as much. To drive an automobile with bad brakes describes active or affirmative negligence. To omit maintenance of brake fluid level in the case of an automobile verbalizes a "passive" act. To use a defective crane describes active or affirmative negligence. To fail to inspect the crane in order to discover its defectiveness verbalizes a fault of omission. And so on.

On the other hand, primary-secondary terminology has a distinct advantage. It suggests that a great deal of legal analysis, and just as often, fact-finding, must first occur before one may conclude whether the act in question is primary or secondary. Moreover, it emphasizes the relativity involved. It does all this too, perhaps, because the words are so bare of concrete overtones.

Indeed, it has been said that the right to indemnification depends on "the relationship of the parties, their contractual or other responsibility to each other, and the degree of wrongfulness indicated by the commission or omission which resulted in the accident" (*Crawford* v. *Blitman Constr. Corp.*, 1 A D 2d 398, 400, *supra*). In general, where the circumstances are such that the party seeking indemnification had a right to look to another not to commit the wrong contributing to the accident, indemnification should be permitted. In such a situation, it may be truly said that, as between the defendants, the party seeking indemnification is only secondarily responsible and is not as such *in pari delicto* as will preclude him from recovery over.

However, it is not exclusively within the voluntary power of the parties to determine whether the ultimate liability may be shifted (Restatement, Restitution, § 88). Public policy and legislative act may prohibit such shifting, either under theories of implied right of indemnity or even express contract indemnity. Thus, for example, under section 241 of the Labor Law, there may not be such a shifting under a claim of implied right of indemnity (*Semanchuck* v. *Fifth Ave. & 37th St. Corp.*, 290 N. Y. 412; *Walters* v. *Rao Elec. Equipment Co.*, 289 N. Y. 57). There are even limits on an express contract of indemnity (*Feuer* v.

*Menkes Feuer, Inc.*, 8 A D 2d 294, 297–298). But short of such mandates resting in policy, the parties may, among themselves, arrange what tasks are to be performed by each and recover in indemnity for liability sustained as a result of the breach of the arrangements, impliedly or expressly made.

The factual setting in a recent case serves as an appropriate illustration of the general analysis.

In *Harrington* v. *615 West Corp.* (2 N Y 2d 476), a painter had been engaged by the landlord of an apartment house to paint the exterior of the building. In order to do the work, it was necessary to string rope across an area of the roof which tenants traversed in order to reach their clotheslines. After a trial, it was found that both the landlord and the painter were liable for failing to warn an injured tenant of the existence of the rope.

The court of Appeals, in denying the landlord's cross claim against the painter, held that the landlord was not entitled to rely upon the painter to warn the tenants. Since it was problematical whether the painter would know of the habit of the tenants to use the part of the roof where the rope was strung, as between the defendants, the painter had not undertaken a primary duty to protect the landlord's tenants from the danger.

Because both the landlord and painter had breached their duty to warn the tenant, both were liable to the tenant. Since, as between them, the landlord and the painter each had an equal obligation to warn, the claim over could not be sustained. The latter issue obviously turned on the relationship of the defendants and their responsibilities to each other.

It is evident that no absolute rule based on faults of omission or commission will suffice. The "right to look" to the other has too many possible sources or bases. Thus, had the *Harrington* case (*supra*) involved a slightly different factual setting, the landlord's cross claim might have been sustained. For example, if the proof showed that the painter had on other occasions used warning signs and that the owner knew this, the primary responsibility as between the defendants for the particular accident might well have been held to rest with the painter.

A leading case, *McFall* v. *Compagnie Maritime Belge,* 304 N. Y. 314, *supra*), is subject to the same analysis. There, a charterer of a vessel was held liable to a longshoreman for injuries sustained when he was overcome by carbon tetrachloride fumes while working aboard the vessel. Although the charterer was found guilty of a breach of duty to the longshoreman in failing to caution the longshoremen to use special care in the

handling of the drums, the charterer's claims over against the stevedoring contractor and the manufacturer were sustained. The stevedoring contractor was held to be under an implied obligation to the charterer to conduct the loading operations in a careful and prudent manner. So, too, the manufacturer was under an implied obligation to the charterer not to ship dangerous merchandise in defective containers.

In the *McFall* case, both the implied obligations had been breached, and the charterer's conduct had not been such as to bar it from an implied right to indemnity. " [T]he factual disparity between the delinquency" of the charterer and that of the other defendants was such as to justify the jury's conclusion that the charterer was guilty of only " passive " negligence (304 N. Y. 314, 330).

It is obvious then that in the most difficult cases in this area the question of liability over is not determinable on the pleadings. More often than not there will be questions of fact resolvable only upon the trial. The Court of Appeals has so said: " The question of the comparative culpabilities of tort-feasors has recently been said by us to involve questions of fact (citing cases)." (*O'Dowd* v. *American Sur. Co. of N. Y.*, 3 N Y 2d 347, 354, *supra*.) Again, in the *McFall* case (*supra*, p. 328) it was said: " Whether negligence is passive or active is, generally speaking, a question of fact for the jury ".

Applying the foregoing analysis, this case presents no special difficulty.

Thus, the very first allegation of negligence in the prime complaint states that Luckenbach knew, or, in the alternative, should have known, of the inherent danger in the use of the oxyacetylene torch by Atlantic. If it should eventuate that in fact Luckenbach did not actually know, but rightfully relied upon Atlantic to use proper measures for its work, even in the vicinity of combustible materials, the primary liability may well be that of Atlantic. This is a double issue of fact not resolvable on the pleading.

Again, it is alleged that Luckenbach took no steps to stop Atlantic's operations. This allegation is denied in Luckenbach's answer. Consequently, from the pleadings, it may be that Luckenbach tried to stop the operations and justifiably relied on Atlantic to follow its request, but that Atlantic failed to comply. The possibilities in failing " to take steps " may include a wide range of conduct, some of which would hardly equal in culpability the responsibility of the actual torchwielders.

It is also alleged that Luckenbach negligently stored explosive and combustible materials upon the pier. Notably, there are

separate allegations as to this: The first is simply that such materials were stored on Luckenbach's pier; the second adds the element of knowledge. It cannot be said, as a matter of law, that Luckenbach would not be liable if it did not have actual knowledge. Indeed, negligence or even recklessness in receiving combustible or explosive cargo, may, under some circumstances, be sufficient to charge Luckenbach with liability. But again, Luckenbach may have been relying properly upon Muehlstein in these respects and may have had a right to look to Muehlstein as primarily responsible for the kind of cargo Muehlstein stored on the pier.

There are further allegations that the storage upon the pier was for an unreasonable length of time. Again, the unreasonable length of time may have been due to the primary fault of Muehlstein in not removing its shipment, as it should have, either in the regular course of business, in the reasonable exercise of care, or in violation of the express requirements of the pier owner. With respect to each of these allegations there will still be a need for balancing the wrongdoing between Luckenbach and Atlantic and Muehlstein, respectively.

One cannot say now on which, if any, of the several charges of negligence Luckenbach may be held liable to plaintiffs. Assuredly, as to some Luckenbach may not be able to shift the ultimate responsibility to its codefendants. But so long as there is but one specification of negligence which may result in liability to Luckenbach in favor of plaintiffs, and upon which it may be entitled to claim over against its codefendants, there is enough to sustain the cross claims (*Putvin* v. *Buffalo Elec. Co.*, 5 N Y 2d 447, 454–455, *supra*; *Lipsman* v. *Warren*, 10 A D 2d 868; *Johnson* v. *Endicott Johnson Corp.*, 278 App. Div. 626; *Robinson* v. *Binghamton Constr. Co.*, 277 App. Div. 468, 471; *Monteverdi* v. *French Realty Corp.*, 274 App. Div. 945).

In summary, then, neither the pleadings nor the accident that occurred, involving so many participants and such relatively complex relationships, suggests the possibility of resolving questions of liability over upon the pleadings alone. The allegations of negligence are broad enough, varied enough, and stated sufficiently in the disjunctive to allow the holding of Luckenbach liable to plaintiffs on numerous theories, only some of which may require a finding of primary responsibility on the part of Luckenbach. Consequently, even on the theory, which is not accepted, that actual knowledge by Luckenbach of dangerous conditions and dangerous operations is irrefutable proof of primary negligence, the cross claims are still good, because the allegations of knowledge are in the disjunctive, namely,

that Luckenbach knew, or should have known. Nor, even assuming that constructive knowledge of dangerous conditions or dangerous operations may, in certain cases warrant a finding of primary negligence, may it be determined on these pleadings that such constructive knowledge on the part of Luckenbach necessarily requires the conclusion that it was primarily responsible for this accident.

While Luckenbach may recover on its two cross claims based on implied rights of indemnity, and these cross claims are adequately pleaded (*Brady* v. *Weiss & Sons,* 6 A D 2d 241, 244–245, *supra*; *Glasgow* v. *Drakes,* 5 A D 2d 693; *D'Onofrio* v. *City of New York,* 284 App. Div. 688, 690), the same conclusion should not be reached with respect to the two cross claims based upon contractual indemnity. The contracts are not annexed to the pleadings, and there are no allegations in the pleadings establishing that either Atlantic or Muehlstein undertook to indemnify Luckenbach for its own alleged wrongful acts. Hence, both of these cross claims were properly dismissed. (*Brown* v. *Fuller Co.,* 3 A D 2d 830; cf. *Thompson-Starrett Co.* v. *Otis Elevator Co.,* 271 N. Y. 36, 41.) In the exercise of discretion, however, Luckenbach should have been granted leave to replead both cross claims, rather than only the cross claim against Atlantic (Civ. Prac. Act, § 283).

Accordingly, the order should be modified, on the law, to reinstate the cross claims based on the implied rights of indemnity and, in the exercise of discretion, to grant defendant-appellant leave to replead its cross claim against defendant-respondent H. Muehlstein & Co., Inc. based upon contractual indemnity, and otherwise be affirmed, with costs to defendant-appellant against defendants-respondents.

RABIN, J. (dissenting in part). I do not agree with the majority that the order appealed from should be modified so as to "reinstate the cross claims based on the implied rights of indemnity". Otherwise I concur.

As I read it, there can be no recovery against the defendant Luckenbach on this complaint unless it be on the ground that Luckenbach was guilty of what is called active negligence or, applying the term of the majority, primary negligence. However, I cannot subscribe to the position (as seems to me to be the one essentially taken by the majority) that where one is guilty of negligence — not such as is affixed by law because of acts of others, but one resulting from his own acts or improper failure to act — he may recover as against another who likewise is guilty of the same kind of negligence, but to a greater degree. Just as one may not recover if his negligence — in the slightest

232

degree — contributed to an accident, so one may not cross-claim against another tort-feasor if the active negligence of the former contributes to the accident, regardless of the degree of such negligence. It is the nature or quality of the negligence of the respective tort-feasors vis-a-vis each other that is determinative of the right to claim over and not the relative degrees of such negligence. A rule of comparative negligence as between joint tort-feasors may be desirable, but I do not think the law has as yet distinguished between joint tort-feasors so as to allow recovery of one over against the other.

It may very well be, although it is not the law, that the better way is to deny all motions to strike cross claims and await the development of all the facts at trial. In most cases, the validity of the cross claim is judged as against what the original plaintiff claims in his complaint. Though the complaint may allege active or primary negligence solely, the proof may establish liability on passive or secondary negligence only. In such case — particularly in one where a cross claim had been stricken — a defendant, for practical purposes, may stand helpless in the face of a motion to conform the pleadings to the proof. That is a real danger, but to avoid it completely would seem to require legislative action.

VALENTE and BASTOW, JJ., concur with BREITEL, J.; BOTEIN P. J., concurs in result only; RABIN, J., dissents in part in opinion.

Order modified, on the law, to reinstate the cross claims based on the implied rights of indemnity and, in the exercise of discretion, to grant defendant-appellant leave to replead its cross claim against defendant-respondent H. Muehlstein & Co., Inc., based upon contractual indemnity, and, as so modified, affirmed, with costs to defendant-appellant against defendants-respondents. Settle order.