Meyer, J.
(dissenting in part). I do not question the authority of the court to reach the conclusion reached by the majority, for the Legislature has spoken only to the converse of the problem we confront[1] and has, apparently deliberately, left to us the ultimate determination of what the rules governing the separation between indemnity and contribution should be,[2] while at the same time noting that our court “may wish to consider the suggestions offered” in *465 section 886B of the Restatement of Torts, Second,[3] suggestions which, if followed, would produce a result contrary to that of the majority.[4] I do, however, seriously question the reasoning, both substantive and procedural, which underlies the majority’s conclusion that the special benefit rule does not provide a basis for the City to obtain indemnity from the specially benefited property owner. I, therefore, dissent.
The morass in decisional law into which the active-passive, actual-constructive, primary-secondary dichoto *466 mies have lead has been chronicled elsewhere and at length.[5] The “persistent criticism” and “widespread dissatisfaction with the inequity of result” lead us, in Dole v Dow Chem. Co. (30 NY2d 143, 148, 149), to adopt a rule that “where a third party is found to have been responsible for a part, but not all, of the negligence for which a defendant is cast in damages, the responsibility for that part is recoverable by the prime defendant against the third party.” The Dole rule, characterized by us as one of “relative contribution” (Kelly v Long Is. Light. Co., 31 NY2d 25, 29), was not “intended to overturn basic and satisfactory principles of common-law indemnification between vicariously liable tort-feasors and tort-feasors guilty of the acts or omissions causing the harm” (Rogers v Dorchester Assoc., 32 NY2d 553, 565-566), and “does not mean that where a defendant is only derivatively liable * * * full responsibility for paying the judgment cannot be assessed against the actively negligent party” (Logan v Esterly, 34 NY2d 648, 651).
There are, of course, bases for indemnification other than that the one seeking indemnity was only vicariously or derivatively liable (see McDermott v City of New York, 50 NY2d 211, 218, n 4). The fallacy of the majority analysis is that, in concentrating on the use of active-passive language in some of the special benefit cases, it overlooks the case law clearly establishing, contrary to its conclusion, that the owner of property specially benefited by a sidewalk appurtenance does indeed owe a duty to the municipality in whose sidewalk the appurtenance has been put to prevent injury to third persons. Its error is in its “focus on *467 the character of the breach, rather than on the nature of the underlying duties involved” (Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L Rev 517, 543).
The duty that arises from use for his own benefit of a sidewalk or highway is “in consideration of private advantage” (Heacock v Sherman, 14 Wend 58, 60). In effect, by accepting the benefit of using the street or sidewalk for his special benefit, the property owner contracts to perform as to the benefit area the municipality’s duty and is liable to the municipality for failure to do so (see City of Brooklyn v Brooklyn City R. R. Co., 47 NY 475, 485). The implied duty assumed when a special benefit appurtenance is installed covers not only proper construction in the first instance but reasonable care in its maintenance (Trustees of Vil. of Canandaigua v Foster, 156 NY 354, 360; see Babbage v Powers, 130 NY 281, 286). It is moreover an implied duty which, as we declared in Canandaigua (supra, at pp 361-362), “requires reasonable precaution on the part of the owner to protect the public as long as he remains the owner and is in possession of any part of the building on the abutting land. He cannot cast the burden of maintenance on the public any more than he could have cast upon them the burden of original construction, for the grate is wholly for the benefit of his property. Nor can he relieve himself of the duty without parting with the entire possession of the property benefited, for the safety of the public requires that the owner, as long as he is in possession of any part of the property, should be compelled to keep his structure in the sidewalk in suitable condition for use as a part of the sidewalk. As the duty is imposed by law for the public safety, its extent is measured by whatever public safety requires.” In consequence, the municipality is permitted to recover “as representatives of the general public entitled to free and safe passage over the sidewalk” {id., at p 360), the entire amount paid by it, notwithstanding that recovery against it was on the ground that the “authorities knew, or should have known” {id., at p 358) that the appurtenance was out of repair.
*468 Ordinarily, a property owner is not responsible for the maintenance of the sidewalk or street abutting his property (Ann., 88 ALR2d 331), and is not liable either to one injured by its disrepair or to indemnify the municipality absent a statute which not only requires that he maintain the sidewalk or highway but speaks expressly to injury resulting from disrepair (compare Willis v Parker, 225 NY 159, with City of Rochester v Campbell, 123 NY 405, and Russell v Village of Canastota, 98 NY 496; and see Village of Fulton v Tucker, 3 Hun 529). But when the sidewalk includes an appurtenance for the special benefit of his property, the municipality is entitled to rely, as between the- owner and itself though not as to an injured third party, upon performance by the owner of his obligation to maintain the appurtenance in safe condition, just as much as the municipality would be entitled to rely upon, and therefore has the right to be indemnified by, one who has voluntarily assumed the duty of maintenance (Doyle v Union Ry. Co. of N. Y., 276 NY 453, 458) or has expressly contracted to do so (Rogers v Dorchester Assoc., 32 NY2d 553, 562, supra; Burke v City of New York, 2 NY2d 90, 94; Beinhocker v Barnes Dev. Corp., 296 NY 925). In this respect the special benefit indemnity rule differs from that governing the indemnity liability of a person causing injuries on a sidewalk or on a highway in which there is no special benefit appurtenance, for in the latter case the obligation to indemnify arises not from the tort-feasor’s special or particular duty to the public or from any express agreement, but from the principle that everyone is responsible for the consequences of his own negligence and must reimburse a municipality compelled to pay for an injury for which the primarily liable wrongdoer should have paid (Oceanic Steam Nav. Co. v Compania Transatlantica Espanola, 134 NY 461, 465, 467-468, 470; Phoenix Bridge Co. v Creem, 102 App Div 354, affd 185 NY 580; City of Rochester v Montgomery, 72 NY 65).
The duty implied by law from the acceptance of a special benefit use has been the foundation for indemnity recovery by the municipality in a large number of cases, some referring to the primary duty of the owner or the special *469 benefit he received, others speaking the active-passive language which so long confused this field of law (Schrold v City of New York, 273 App Div 872, affd 298 NY 738 [special benefit];[6] Mazelis v Wallerstein, 51 AD2d 579 [primarily liable; Dole worked no change in rule]; Wylie v City of New York, 286 App Div 720 [special benefit duty]; Runkel v Homelsky, 286 App Div 1101 [primarily liable]; Ohrt v City of Buffalo, 281 App Div 344, 345 [special benefit, unless city “guilty of active negligence which caused the water meter box cover to become loose”]; Nickelsburg v City of New York, 263 App Div 625 [special benefit]; and see Satta v City of New York, 272 App Div 782 [indemnity allowed with respect to shut-off valve installed by owner without statement of basis for doing so]; Gordon v City of Albany, 278 App Div 233, mot for lv to app den 302 NY 949 [special benefit rule does not protect city against liability to injured person though it permits recovery over by city against owner]; and the 1952 Report of NY Law Rev Comm [NY Legis Doc No. 65], at pp 41, 317).
The majority, nevertheless, ignoring the implied duty cases above set forth and relying upon active-passive language in four decisions (one of which, Lobello v City of New York, 268 App Div 880, affd 294 NY 816, did not involve a special benefit appurtenance and another of which, Johnsen v Gallagher, 28 AD2d 560, affd 21 NY2d 981, does not state whether the “condition of the sidewalk” to which it refers involved a special benefit), abolishes the special benefit-indemnity rule. To do so on the conception that Dole's abolition of active-passive reasoning justifies doing so and thus to shift to the municipality such share of the responsibility for damages as a jury sees fit to impose notwithstanding the property owner’s duty, implied from acceptance of the special benefit, to maintain the appurtenance, to pay all damages resulting from his failure to do so, is truly to throw out the baby with the bath water.[7] It is *470 to do so, moreover, without discussion of the contrary position espoused in section 886B (subd [2], par [f]) of the Restatement of Torts, Second. Subdivision (2), which Comment d tells us lists instances in which “there is general recognition that indemnity should be granted,” includes in paragraph (f) the situation in which “[t]he indemnitor was under a duty to the indemnitee to protect him against the liability to the third person.” Comment j to the section explains that “The duty to protect the indemnitee from liability may arise under a contract or be imposed by statute or the common law. A typical example arises when a landowner allows a sidewalk to fall into disrepair and is required to indemnify the city when it becomes liable for injury to a pedestrian.” The basis of the special benefit-indemnity obligation being the duty to protect the City against liability resulting from the appurtenance, which is spelled out by Trustees of Vil. of Canandaigua and the other cases cited above, the City is entitled to indemnity in this case.[8] Nor can the majority find support for its position in the fact, referred to on page 458 of the opinion, that plaintiff tripped over the water shut-off cover “as she was attempting to avoid cracks in the sidewalk a short distance ahead.” Though the City would be responsible for repair of such cracks, the sole question submitted to the jury was whether the fact that the water main cover was raised above the sidewalk created a dangerous condition (compare Washington Gas Co. v District of Columbia, 161 US 316, 321-322), to which plaintiff’s attorney took no excep *471 tion. The contrary arguments in the majority’s footnote (at p 463) are both irrelevant; that evidence of cracks in the sidewalk was before the jury, because that issue was not submitted to the jury by the court;[9] that the City may have had actual notice of the defect in the appurtenance, because Trustees of Vil. of Canandaigua v Foster (156 NY 354, 358, supra [quoted above, at p 467]) held indemnity proper nevertheless.
Finally, as concerns the substantive question, it should be noted that the policy of encouraging settlement of tort actions involving multiple defendants is not a sufficient reason for changing the special benefit-indemnity rule. The purpose behind the 1974 amendment of section 15-108 of the General Obligations Law was to provide “a means for encouraging settlements, while assuring that no wrongdoer is responsible for more than his equitable share of the damages incurred, by the injured party” (Twentieth Ann Report of NY Judicial Conference, 1975, p 225), but CPLR 1404 (subd [b]), adopted at the same time, also made clear the legislative intent not thereby to limit the rules governing indemnity (id., at p 222; see, also, Nineteenth Ann Report of NY Judicial Conference, 1974, pp 242-243). Nor is Riviello v Waldron (47 NY2d 297) authority to the contrary, for it held only that a general release reserving rights against the employee-tort-feasor did not foreclose recovery by the injured plaintiff from the vicariously liable employer, whereas in the instant case plaintiff not only settled with the special benefit property owner but agreed to hold her harmless if “the City of New York obtains any judgment against [her] or our reading of Section 15-108 of the General Obligations Law is incorrect.” Under such circumstances, there is no unfairness in holding that settlement with the owner forecloses recovery from the municipality, though as Professor David D. Siegel notes (Practice Commentaries, McKinney’s Cons Laws of NY, Book *472 7B, CPLR C3019:60, 1981-1982 Pocket Part, pp 42-43), litigation may be necessary in order to settle the factual basis for the municipality’s liability to plaintiff, which can affect its right to indemnity from the owner.
Turning now to the procedural problems with the result affirmed by the majority, I note that though plaintiff had not sued the property owner, the two of them stipulated to a settlement at the beginning of the trial. When that stipulation was put on record, the City expressly reserved all its rights against the owner should judgment be recovered by plaintiff against it. Notwithstanding that reservation, the owner’s attorney then withdrew from the trial, which proceeded with only the attorneys for plaintiff and for the City present. The Trial Judge nevertheless denied the City’s motion to dismiss the action because of the plaintiff’s release of the owner[10] and denied three separate requests that the jury be charged that if the City were found negligent it would be entitled to full indemnity against the owner if the jury found the shut-off valve disk to have been installed for the owner’s benefit. He then compounded that error by charging that owner’s duty was simply to inform the City of the unsafe condition of the box so that it could repair the condition. Whatever the proper rule concerning indemnity in special benefit cases (as to which my views are fully stated above) and whatever the propriety of denying the City’s motion to dismiss, it was clear error so to instruct the jury and the error, which was objected to, cannot be deemed harmless since it bore upon the jury’s apportionment of 65% culpability to the City and only 35% to the owner.[11] At the very least, therefore, there should be a reversal and a new trial.
For the foregoing reasons, my vote is to affirm the order of the Appellate Division, with costs, on the third-party defendant’s appeal.
*473 Chief Judge Cooke and Judges Jones, Wachtler and Fuchsberg concur with Judge Gabrielli; Judge Meyer dissents in part and votes to affirm on the third-party defendant’s appeal in a separate opinion in which Judge Jasen concurs.
On plaintiff’s appeal: Appeal dismissed, without costs.
On third-party defendant’s appeal: Order reversed, with costs, and the judgment of the Civil Court of the City of New York, New York County, reinstated.

. CPLR 1404 (subd [b]) provides that “Nothing contained in this article [which deals with contribution] shall impair any right of indemnity or subrogation under existing law.”

. CPLR article 14 and section 15-108 of the General Obligations Law were proposed in the Twelfth Annual Report of the Judicial Conference to the Legislature on the Civil Practice Law and Rules. That report, which is reprinted in the Twentieth Annual Report of the Judicial Conference, stated CPLR 1404 (subd [b]) to be “[i]n keeping with the premise that Dole was intended essentially to modify the law of contribution, leaving much of the traditional common law of indemnity unchanged” (Twentieth Ann Report of NY Judicial Conference, 1975, p 222; see, also, p 216).

. The full paragraph in which the quoted words may be found reads (Twentieth Ann Report of NY Judicial Conference, 1975, p 222): “No attempt has been made to list here those situations in which a right to indemnity, in the sense of a complete shifting of the entire financial burden from one tortfeasor to another (See McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 327-28 (1852)), exists. The Court of Appeals is in the process of formulating new guidelines (Rogers v. Dorchester Associates; Kelly v. Long Island Lighting Co.) and this development of the substantive law should be left to them. The Court may wish to consider the suggestions offered in a draft of the Restatement 0Second) of Torts which has attempted to separate contribution from indemnity as the Court of Appeals did in Rogers and as this Article does and has listed specific situations in which indemnity is available even in the absence of an express contract of indemnity. Restatement (Second) of Torts §886B (Tent. Draft No. 16, 1970).” Moreover, the report noted (id., p 212) that it was based on a study by Professor M. E. Occhialino of the Syracuse University College of Law published as part of the Nineteenth Annual Report of the Conference. The Occhialino study contained the following relevant paragraphs (Nineteenth Ann Report of NY Judicial Conference, 1974, pp 242-243):
“So too any proposed change in New York law should reflect the fact that Dole, while working within the framework of implied indemnity, actually varied the rule of contribution. Therefore, it is entirely consistent with the reasoning of the Court of Appeals to modify the contribution statute to reflect the impact of Dole while at the same time expressly preserving inviolate'common law principles of indemnity, other than those resting solely on the discarded ‘active-passive’ test, and providing that where one doctrine is applicable, the other is not.
“No attempt has been made here to list specifically those factual situations in which, under Rogers,, indemnity rules rather than contribution rules will be applied. That task is one for the Court itself, and any proposed statutory change should be designed to accommodate subsequent judicial decisions specifying the scope of the indemnity doctrine. A pending proposal to include in the Restatement (Second) of Torts a new section specifically identifying those situations in which indemnity and not contribution is appropriate 18 may offer some guidance to the Court of Appeals as it develops in more detail the scope of traditional indemnity principles.” (Emphasis supplied.)
Footnote 18 reprinted in full proposed section 886B of the Restatement, the pertinent part of which appears in the text of this opinion following footnote 7.

. (See text following n 7.)

. (Meriam & Thornton, Indemnity Between Tort-feasors: An Evolving Doctrine In the New York Court of Appeals, 25 NYU L Rev 845, 860 [“an uncharted realm where speculation will inevitably supplant reliable interpretation”]; Davis, Indemnity Between Negligent Tortfeasors: A Proposed Rationale, 37 Iowa L Rev 517, 543 [“hopeless muddle of (New York) precedents”]; Leñar, Contribution and Indemnity Between Tortfeasors, 81 U of Pa L Rev 130, 156 [“The inadequacy of the words ‘passive’ and ‘active’ as a test of the propriety of allowing indemnity in hard cases must be apparent”].) The difficulty caused Justice Charles D. Breitel, as he then was, to note in Bush Term. Bldgs. Co. v Luckenbach S. S. Co. (11 AD2d 220, 227, revd 9 NY2d 426) that the “terminology * * * can be manipulated to produce any result,” and Justice Matthew M. Levy in Falk v Crystal Hall (200 Misc 979, 984, affd 279 App Div 1073, mot for lv to app den 280 App Div 861), to note the confusion arising from the “attempt to fit specific cases into the bare cubicles of easy nomenclature.”

. In Schrold we affirmed over the owner’s contention that the city, having failed to notify it that the drain cover was missing, was actively negligent and the owner only passively so.

. I have not overlooked cases such as Mahar v City of Albany (198 Misc 904, affd 278 *470 App Div 1003, mot for lv to app den as to city 303 NY 1014; see, also, 303 NY 672) and Smith v Barbaro (63 AD2d 804), which rest upon the fact that city employees negligently performed work on the appurtenance (see, also, Phoenix Bridge Co. v Creem, 102 App Div 354, 356, affd 185 NY 580 [municipality “could only be deprived of the right of indemnity by proof that it did in fact participate in some manner in the omission beyond its mere failure to perform the duty imposed on both by the law”]). The evidence in the instant case does not even suggest such a basis for denying indemnity. Nothing in Thompson v City of New Rochelle (26 NY2d 1047, 1049) is contrary to the rule which I find governs, for there we held only that as between the property owner and the water company which installed the water shut-off box in the sidewalk the latter “had the primary duty to correct the condition which was the proximate cause of the accident.” To the contrary, that reasoning supports allowing the City indemnification here, for as between it and the property owner the latter had the primary duty to correct the offending condition.

. City of Sacramento v Gemsch Inv. Co. (115 Cal App 3d 869) is not authority to the contrary for the court did not there consider indemnity based upon an implied-in-law special benefit duty such as is recognized by New York case law.

. The charge was: “Now, what must be shown to show that the defendant was negligent? First of all, the plaintiff must show there was a dangerous condition; a condition as a result of which someone might be injured. The specific number of inches or less than that that the water main cover was raised from the ground is not important as such. Did it constitute a dangerous condition? If you find that it did not but hasn’t been shown, you will find for the defendant. That’s all there is to it.”

. Though in doing so he referred to'discussion before jury selection which had been made part of the record, the printed record does not reproduce the discussion or otherwise indicate the basis for the ruling. Though a settlement by the City would not affect its right to indemnity from the owner (McDermott v City of New York, 50 NY2d 211, 220), the converse is not true in the circumstances of this case for the reasons already outlined in the text above.

. The record does not make clear the basis on which apportionment between the City and the nonparticipating owner was submitted to the jury, but the City’s attorney *473 repeated the exception already noted concerning the City’s rights against the owner and, after the jury apportionment verdict came in, moved for judgment over in favor of the City against the owner, so the issue was clearly preserved.