[644 NYS2d 919]

CITY OF NEW YORK et al., Appellants-Respondents, v LEAD INDUSTRIES ASSOCIATION, INC., et al., Respondents, and FULLER-O'BRIEN CORPORATION, Respondent-Appellant.

First Department, June 27, 1996

APPEARANCES OF COUNSEL

*George Gutwirth* of counsel *(Francis F. Caputo, Alan H. Kleinman* and *John R. Low-Beer* on the brief; *Jeffrey D. Friedlander,* attorney), for appellants-respondents.

*Philip H. Curtis* and *Michael T. Nilan* of counsel *(Arnold & Porter; Dean M. Harris; Haythe & Curley; Popham, Haik, Schnobrich & Kaufman, Ltd.; Kronstein, Veisz & Wexler; Kirkland & Ellis; Bartlit Beck Herman Palenchar & Scott; Gilbert, Segall & Young; Sullivan, Sullivan & Pinta,* and *Jones, Day, Reavis & Pogue,* attorneys), for Lead Industries Association, Inc. and others, respondents.

*Daniel J. Thomasch* of counsel *(Lauren J. Elliot* on the brief; *Donovan Leisure Newton & Irvine,* attorneys), for American Cyanamid, respondent.

*Mitchell D. Bernstein* of counsel *(Wade R. Joyner* on the brief; *Moses & Singer,* and *Crowley Barret & Karaba,* attorneys), for Fuller-O'Brien Corporation, respondent-appellant.

## OPINION OF THE COURT

Per Curiam.

In this action against various lead paint manufacturers and their trade association the issue before us is whether the City plaintiffs have sufficiently pleaded causes of action for indemnity and restitution.

In order to put the issues in proper perspective a brief history of this litigation is necessary. The City plaintiffs (the City of New York, the New York City Housing Authority and the New York City Health and Hospitals Corporation) originally commenced this action against five major manufacturers of lead-based paint and their trade association, Lead Industries Association, Inc., in June 1989, to recover damages alleged to have been incurred by plaintiffs by reason of the use of such paint in various buildings owned by them. The complaint asserted causes of action based on negligence, products liability, and fraud and also included claims for restitution and indemnity as well as allegations that defendants were jointly and severally liable on several theories including concert of action and enterprise liability. The underlying factual allegations charged defendants with fraudulently misrepresenting the safety of their product and thereafter concealing their knowledge of the health hazards of the product, particularly to children, as a result of which plaintiffs were obliged to expend considerable sums of money in inspecting, testing, monitoring and abating the hazards arising from the use of the lead paint, in testing children at risk of lead poisoning and in treating the child victims of such poisoning, for which restitution was sought.

On a motion by the original defendants to dismiss, the IAS Court (Dontzin, J.), in a decision entered on December 26, 1991, granted dismissal of the tort and products liability causes of action on Statute of Limitations grounds, but upheld the fraud and restitution claims. No challenge to the indemnity or joint and several liability claims had been raised by defendants on that motion.

Upon appeal to this Court, we affirmed Justice Dontzin's denial of the motion to dismiss the fraud and restitution claims (*City of New York v Lead Indus. Assn.*, 190 AD2d 173), expressly holding (in an opinion by Wallach, J.) that the allegations of defendants' knowing misrepresentation of the safety of the product to the public for the purpose of marketing the product known to be defective and a health hazard, and their engaging in a scheme that concealed this knowledge from the public, gave rise to a timely cause of action for fraud and, similarly, that the allegations seeking recovery for plaintiffs' expenditures in abating the hazard set forth a viable cause of action for restitution.

In September 1993, subsequent to the aforenoted affirmance, plaintiffs served an amended complaint, substantially similar

to the original pleading, that added two additional defendants, American Cyanamid Company, as successor-in-interest to the John R. McGregor Lead Company, and Fuller-O'Brien Corporation.

In January 1994 all of the defendants moved for dismissal of the indemnity and restitution claims, with the newly added defendants American Cyanamid and Fuller-O'Brien also moving, on untimeliness grounds, for dismissal of the fraud claims against them and Fuller-O'Brien additionally moving for dismissal on lack of jurisdiction grounds. It is important to note at this juncture that the primary basis relied upon by the various defendants for the dismissal of the indemnity and restitution claims was this Court's decision, in December 1993, affirming the trial court's dismissal of such claims in the case of *888 7th Ave. Assocs. Ltd. Partnership v AAER Sprayed Insulations* (199 AD2d 50, *lv dismissed in part and denied in part* 84 NY2d 841), in which all other causes of action, including fraud, had been held time barred. Viewing our decision in that case as dispositive, the IAS Court granted the motions to dismiss of all the defendants with respect to the indemnity and contribution claims on that basis. As to the two later-added defendants, American Cyanamid and Fuller-O'Brien, the court also found the fraud claims to be time barred and dismissed the entire complaint as to each of them without reaching the specific issue of jurisdiction raised by Fuller-O'Brien. With respect to the six original defendants, against whom viable fraud claims still remained, the court noted that the equitable claims of indemnity and restitution would be essentially duplicative and add nothing because they provided no basis for a broader remedy than the fraud claims.

The City plaintiffs now appeal the order, and judgments based thereon, which granted dismissal of the indemnity and restitution claims against the six original defendants and the entire complaint with respect to American Cyanamid and Fuller-O'Brien. Fuller-O'Brien cross-appeals from that part of the court's order which denied its motion to dismiss for lack of personal jurisdiction.

We must now determine whether plaintiffs have sufficiently set forth viable causes of action for indemnity and/or restitution against the various defendants.

The factual thrust of plaintiffs' complaint in support of these claims is that hazardous conditions arose in plaintiffs' buildings from the use of lead paint manufactured and marketed by defendants, that plaintiffs incurred substantial expenditures to

monitor and remediate the hazards caused by these lead pigments including abatement and clean-up costs and costs for treating and testing children at risk of and suffering from lead poisoning, that in undertaking such expenditures plaintiffs discharged a duty which, although imposed upon plaintiffs by statute and regulation, should properly have been borne by defendants who were responsible for having created this danger to public health and safety and that plaintiffs should therefore be reimbursed for such expenditures both by way of indemnification and restitution.

Whether these allegations are enough to withstand dismissal requires an examination of the nature of each of these causes of action. While the parties frequently refer to and discuss these claims in the conjunctive, indemnity and restitution are separate and discrete causes of action with different essential elements although both are permeated by underlying equitable concerns involving unjust enrichment. (*See, e.g., McDermott v City of New York*, 50 NY2d 211; *Matter of State of New York v Ford Motor Co.*, 136 AD2d 154, *affd* 74 NY2d 495.)

We turn first to the cause of action for indemnity. The following discussion of the genesis and character of that remedy is set forth in *McDermott v City of New York* (*supra*, at 217) in terms particularly relevant to the instant case: "It is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity'. (Restatement, Restitution, § 76). To prevent unjust enrichment, courts have assumed the duty of placing the obligation where in equity it belongs [citations omitted]."

The Court also makes clear at the very outset (*supra*, at 215) that a "cause of action for indemnification interposed against the manufacturer of an allegedly defective product is independent of the underlying wrong and for the purpose of the Statute of Limitations accrues when the loss is suffered by the party seeking indemnity", and subsequently emphasizes that "[b]ecause the indemnity claim is a separate substantive cause of action, independent of the underlying wrong, this accrual rule remains the same, whatever the underlying breach of duty for which indemnification is sought" (*supra*, at 218). Significantly, in *McDermott*, after the City had settled the claim of a sanitation worker injured by a malfunctioning sanitation truck, it was permitted to pursue an indemnity claim against the manufacturer of the truck to recover the payment

the City had made on account of the manufacturer's breach of duty to the injured worker in products liability, notwithstanding that both the worker's and the City's direct claims against the manufacturer for products liability were time barred (*see, supra,* at 218-219, n 5). Indeed, defendants, in their brief, acknowledge that an indemnity claim is not barred even if the injured party's direct claim against the indemnitor-wrongdoer is time barred.

The gravamen of an action for indemnity is that both parties, indemnitor and indemnitee, are subject to a duty to a third person under such circumstances that one of them, as between themselves, should perform it rather than the other (Restatement of Restitution § 76, comment *b,* at 331-332). The classic situation giving rise to a claim for indemnity is where one, without fault on its own part, is held liable to a third party by operation of law (frequently statutory) due to the fault of another. It is the independent duty which the wrongdoer owes to prevent the other from becoming vicariously liable, and cast in damages, to the injured party that is the predicate for the indemnity action (*see, Bush Term. Bldgs. Co. v Luckenbach S. S. Co.,* 11 AD2d 220, 224 [Breitel, J.], *revd on other grounds* 9 NY2d 426; 23 NY Jur 2d, Contribution, Indemnity, and Subrogation, § 64), and it is not necessary that the indemnitee establish that the indemnitor ever has owed, or currently owes, it a separate duty apart from the duty to indemnify (*see, Mauro v McCrindle,* 70 AD2d 77, *affd* 52 NY2d 719; *see also, Oceanic Steam Nav. Co. v Compania Transatlantica Espanola,* 134 NY 461, 467-468).

A cause of action for restitution is defined in section 115 of the Restatement of Restitution as follows: "A person who has performed the duty of another by supplying things or services although acting without the other's knowledge or consent, is entitled to restitution from the other if (a) he acted unofficiously and with intent to charge therefor, and (b) the things or services supplied were immediately necessary to satisfy the requirements of public decency, health, or safety." Unlike a claim for indemnity, a plaintiff seeking restitution need not have been under a duty to perform that for which restitution is sought but, rather, that such party because there was an immediate necessity to protect "public decency, health or safety", took action to fulfill a duty actually owed by the defendant restitutor. While traditionally, it was necessary that plaintiff have acted voluntarily, it has been held that it is not fatal to a cause of action for restitution that the plaintiff may also have had a

statutory duty to act. (*City of New York v Lead Indus. Assn.*, 190 AD2d 173, *supra; State of New York v Schenectady Chems.*, 103 AD2d 33.) Another distinction between the two causes of action is the extent of the damages that may be recovered, a more limited measure of recovery, with emphasis on reasonable costs of abatement, prevailing in the case of restitution. (*State of New York v Schenectady Chems., supra.*)

Defendants' motion to dismiss was based on the contention that since plaintiffs' direct tort claims were time barred their causes of action for indemnification and restitution could not stand because the complaint failed to set forth facts showing that defendants owed some other actionable duty to plaintiffs independent of the obligation to indemnify.

Understandably, defendants, as they did in the motion court, continue to rely heavily on this Court's affirmance of the decision in *City of New York v Keene Corp.* (132 Misc 2d 745, *affd* 129 AD2d 1019), and our more recent decision in *888 7th Ave. Assocs. Ltd. Partnership v AAER Sprayed Insulations* (199 AD2d 50, *supra*).

In *Keene*, involving an action by the City against asbestos manufacturers and others, the trial court upheld the pleading of indemnity and restitution causes of action in a complaint that had previously been held to set forth other viably pleaded tort causes of action including strict liability and negligence claims. While the trial court opined that 'if none of the other causes of action asserted in the complaint were viable, then the underpinning of "indemnity-restitution" (actually referring only to the indemnity claim) would be destroyed (*supra*, at 752), our affirmance, without opinion, did no more than sustain the court's holding with respect to the sufficiency of the pleading of the indemnity and restitution claims. We did not, and do not, adopt the construction urged by defendants that an indemnity or restitution action fails unless the plaintiff seeking indemnity also has another direct cause of action against the defendant that is still viable. This would be wholly contrary to the long-standing and well-settled principles regarding the purpose and character of an indemnity claim against the manufacturer of an allegedly defective product as "independent of the underlying wrong" and the distinctive accrual rules applicable to such actions (*McDermott v City of New York, supra*, at 218). The gravamen of an indemnity claim is not that the defendant has breached some duty of care which it owes directly to the plaintiff, but rather that they both owe a duty to some third party and that because of defendant's negligence

or wrongful conduct the plaintiff has been held legally liable and cast in damages to the third party. It is the equitably imposed obligation which the actual wrongdoer owes to indemnify the other who has, without fault on its part, become legally liable and cast in damages to a third party by reason of that wrongdoing that is the only critical duty vis-à-vis plaintiff and defendant in an indemnity context. (*Rosado v Proctor & Schwartz*, 66 NY2d 21; *McFall v Compagnie Mar. Belge*, 304 NY 314; *Mauro v McCrindle*, 70 AD2d 77.) Thus, the respondents' reliance on the trial court's reference in *City of New York v Keene Corp.* (*supra*) to plaintiffs' need for some other viable cause of action against defendants as a prerequisite to an indemnity claim is unavailing.

*888 7th Ave. Assocs. Ltd. Partnership* (*supra*) involved property damage by reason of asbestos contamination in a commercial building where plaintiff, the current owner, was charged with the prior owner's long-standing knowledge of the existence of the dangerous condition so that its tort and strict liability claims against defendants were held to be time barred. In asserting causes of action for indemnity and restitution, the only duties alleged by plaintiff to have been breached by defendants were the very duties underlying its time-barred tort and strict liability claims. It was, therefore, quite apparent in that case that plaintiff was, in essence, seeking to circumvent the Statute of Limitations bar on its tort claims by merely recasting them in indemnity and restitution terminology and our affirmance was a rejection of what we viewed as an attempt to inappropriately utilize such nomenclature. While we adhere to our holding in *888 7th Ave. Assocs. Ltd. Partnership* (*supra*) because no true indemnity or restitution claim was there pleaded, to the extent that the unfortunate choice of obscure language in the decision, unnecessary to the result, appears to posit the affirmance of the dismissal of the indemnity and restitution causes of action in terms of time-barred third-party actions, we reject it. As previously indicated, it is the breach by defendant of an underlying *duty* owed to a third party, even if an action based thereon by that party against defendant is time barred, that is critical to a plaintiff's right to bring an indemnity action to recover the damages which plaintiff was caused to pay as a result of defendant's breach of its duty to the third party. (*McDermott v City of New York, supra.*)

■ In light of the foregoing, little discussion is necessary with respect to the sufficiency of plaintiffs' pleading with re-

spect to the cause of action for restitution in light of our prior decision on that issue (190 AD2d 173, *supra*). The thrust of the complaint is that plaintiffs took the immediate action necessary to protect the health and safety of the residents of their buildings, particularly children, from the well-recognized hazards of lead paint which had been manufactured and marketed by defendants. As stated by Justice Wallach, in our prior decision, the reasonable costs of abatement are recognized as recoverable on such a claim. It may also be noted that restitution has been characterized as a particularly relevant remedy for the costs of abatement of asbestos, a problem of similar wide-spread consequence as lead paint (*see, City of New York v Keene Corp.*, 132 Misc 2d, *supra,* at 751) and that flexibility and discretion may be exercised in fashioning a restitution remedy in light of the particular equities involved. (*See, Matter of State of New York v Ford Motor Co.*, 136 AD2d 154, *supra.*)

We turn now to the cause of action for indemnity, which has not been previously ruled upon by this Court. Plaintiffs set forth that at the time they incurred the expenditures sought to be recovered they, as the owners of the buildings where the hazardous lead paint had been used, owed a nondelegable legally imposed duty to their tenants, particularly the children, in those buildings and that such expenditures on their part were made necessary because of defendants' breach of their duty to provide a reasonably safe product that would not be a source of harm to children and others, the ultimate users who were exposed to defendants' toxic product. Such allegations include the necessary showing of the respective duties owed by plaintiffs and defendants to third parties (the tenants' children) and the role of defendants' breach of their duty to the third parties as the precipitating cause of the damages which plaintiffs were caused to sustain in discharge of their statutorily imposed duties to those same parties. While there is no question that direct payments by plaintiffs to particular individuals injured by the hazards allegedly caused by defendants would provide the final predicate necessary for a traditional indemnity claim, there is no reason why expenditures for abating and cleaning up the hazards attributable to defendants, and treating and monitoring the health of children exposed to those hazards, should not equally be compensable. An implied indemnity action is based upon the law's notion of what is fair and proper between the parties and its purpose is equitable distribution of the loss. (*Mas v Two Bridges Assocs.,*

75 NY2d 680.) Clearly, the salutary goals of the remedy are furthered when preventive and ameliorative steps to abate the hazards at the earliest opportunity are immediately taken to limit the disastrous consequences to children that would ensue from continued exposure to lead paint. In taking the steps that they have, albeit by statutory command, the City plaintiffs have not only sharply curtailed the potential for harm to untold numbers of children but have also significantly diminished the detrimental consequences to defendants that would otherwise arise therefrom by way of continuing litigation as individual children suffer injury from continued exposure to the paint and seek legal redress. Moreover, by monitoring and treating children exposed to the hazardous paint, plaintiffs are similarly limiting the extent and amount of potential damages that could be suffered by defendants through the individual lawsuits on behalf of such children, either brought directly against defendants or by way of individual indemnity actions by plaintiffs to recover payments made to specific children. Nor is it insignificant that, in light of the special accrual rules that apply to infants' actions and to indemnity actions, the six-year Statute of Limitations in the latter instance commencing upon payment to the injured third party (*McDermott v City of New York, supra*), plaintiffs' preventive measures will also, as a practical matter, serve to shorten the ultimate time frame within which defendants will be called upon to answer for the consequences stemming from exposure to their hazardous product.

To deny plaintiffs the right to seek recovery of the very substantial sums that they have been caused to expend, in remediating and inhibiting the potential for injury and damages due to defendants' unsafe product, would be to permit the alleged defendant wrongdoers to be "unjustly enriched" by insulating them, at plaintiffs' expense, from potential tort and indemnity liability that would otherwise have arisen. This is precisely the kind of inequitable result, and unjust enrichment, that an indemnity action is designed to prevent. (*See, e.g., 3105 Grand Corp. v City of New York*, 288 NY 178, 181.)

We would also note that in recognition of the utility of indemnity as a remedy for addressing contemporary environmental concerns, its equitable reach has been extended to a situation, not unlike the present case, where the State, acting under a statutory mandate, has expended moneys for the cleanup and removal of an environmental hazard caused by oil spillage. The State was permitted to seek recovery of its

expenditures from the party responsible for the spillage by way of an indemnity action with its six-year Statute of Limitations accruing upon the State's expenditures of funds for the cleanup. (*State of New York v Stewart's Ice Cream Co.*, 64 NY2d 83.)

Accordingly, we find that the plaintiffs' pleading is sufficient both with respect to the indemnity and restitution claims and that the trial court's dismissal thereof based upon our decision in *888 7th Ave. Assocs. Ltd. Partnership v AAER Sprayed Insulations* (*supra*) should be reversed.

While the pleading of the fraud cause of action against the original six defendants was previously sustained by this Court, and is not in issue on this appeal, it must be emphasized that the viability of the indemnity and/or restitution claims is in no way dependent upon that separate fraud cause of action. Moreover, with respect to the fraud cause of action, we do not reach defendants' reliance argument, since this issue was not ruled on by the IAS Court and is not properly before us on this appeal.

While defendant Fuller-O'Brien Corporation may not appeal from the judgment which dismissed the complaint against it, as it was not aggrieved by that judgment, we may, and do, consider its argument that the IAS Court improperly found that it was subject to personal jurisdiction as an alternative argument for affirmance of the judgment as to it. Upon such consideration, we nevertheless find that the motion should be denied. The IAS Court properly found that discovery was warranted on the issues of whether Fuller-O'Brien was the successor to a corporation alleged to have manufactured lead pigment and whether that corporation had a market share of sales, sold nationally and mass advertised through representations as to the safety of the product, thereby making it amenable to suit in New York under a market share theory of liability (*see, Matter of New York County DES Litig.*, 202 AD2d 6).

Finally, the alternative argument for affirmance offered by defendant American Cyanamid Company that the complaint was properly dismissed against it because it is not a successor to a company which manufactured white lead pigment should properly await further discovery.

Accordingly, the judgment of the Supreme Court, New York County (Kristin Booth Glen, J.), entered June 17, 1994, which dismissed the complaint as against defendants Fuller-O'Brien Corporation and American Cyanamid Company, should be

unanimously reversed, insofar as appealed from, on the law, to reinstate the causes of action for indemnification and restitution, without costs. Judgment of the same court and Justice, entered July 26, 1994, upon an order granting the motion of defendants to dismiss plaintiffs' causes of action for indemnification and restitution, unanimously reversed, on the law, and the causes of action reinstated, without costs. Appeal from the order, same court and Justice, entered June 2, 1994, should be dismissed as subsumed in the judgments, without costs. Cross appeal by defendant Fuller-O'Brien Corporation from the order entered June 2, 1994 and the judgment entered June 17, 1994 should be dismissed for lack of standing, without costs.

SULLIVAN, J. P., ROSENBERGER, ELLERIN, RUBIN and MAZZA-RELLI, JJ., concur.

Judgment, Supreme Court, New York County, entered June 17, 1994, which dismissed the complaint as against defendants Fuller-O'Brien Corporation and American Cyanamid Company, reversed, insofar as appealed from, on the law, to reinstate the causes of action for indemnification and restitution, without costs. Judgment of the same court and Justice, entered July 26, 1994, upon an order granting the motion of defendants to dismiss plaintiffs' causes of action for indemnification and restitution, reversed, on the law, and the causes of action reinstated, without costs. Appeal from orders, same court and Justice, entered June 2, 1994, dismissed as subsumed in the judgments, without costs. Cross appeal by defendant Fuller-O'Brien Corporation from the order entered June 2, 1994 and the judgment entered June 17, 1994, dismissed for lack of standing, without costs.