*464 Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered May 16, 2013, which, to the extent appealed from as limited by the briefs, granted the motion of defendants Merrill Lynch, Pierce, Fenner & Smith Inc. (MLPFS), Merrill Lynch International Inc. (MLI), and Merrill Lynch & Co., Inc. (Merrill Lynch) (the Merrill defendants) to dismiss the first cause of action (rescission) as against them and the second, third and fourth causes of action (fraud, conspiracy and aiding and abetting) as against MLI and Merrill Lynch, denied the Merrill defendants’ and defendant 250 Capital LLC’s motions to dismiss the second cause of action as against MLPFS and 250 Capital, and denied the Merrill defendants’ and 250 Capital’s motion to dismiss the sixth cause of action (unjust enrichment) as against them, unanimously modified, on the law, to deny the motion to dismiss the second cause of action as against Merrill Lynch and MLI, and to grant the motions to dismiss the sixth cause of action as against the Merrill defendants and 250 Capital, and otherwise affirmed, without costs.
Plaintiff Loreley Financing (Jersey) No. 28 Limited is a company organized under the laws of Jersey, Channel Islands. It was formed to purchase $60 million of securities issued in connection to a credit default obligation (CDO). The CDO was structured around a special purpose entity, Auriga CDO, Ltd. (Auriga). Auriga was formed by Merrill Lynch. Residential mortgage-backed securities (RMBS) accounted for all the col-laterals in Auriga’s CDO.
Pursuant to a Collateral Management Agreement, 250 Capital, a subsidiary of Merrill Lynch, was the collateral manager for Auriga’s collateral debt securities. As such, 250 Capital selected the securities for the pool and had the right to substitute assets in and out of the pool. Two other subsidiaries of Merrill Lynch, MLPFS and MLI, were intended third-party beneficiaries of the Collateral Management Agreement.
In addition, MLPFS was the initial purchasers of the securities issued by Auriga, and MLI provided interim financing as a warehouse lender. At the same time, MLI acted as a counter-party, as purchaser of a credit default swap (CDS). At the time the CDO was created, Auriga was required to enter into a CDS with MLI. Specifically, as the buyer of the CDS, MLI agreed to make periodic payments to the seller, Auriga. In return, Auriga agreed to compensate MLI in the event the underlying RMBS defaulted or experienced a similar credit event. In effect, under the CDS, the risk of default was transferred from the holder of the fixed-income security emanating from the CDO, to the seller of the CDS, Auriga.
*465 In 2011, plaintiff Loreley Financing commenced this action against Merrill Lynch and its affiliates MLI, MLPFS and 250 Capital, among others, accusing them of causing plaintiff to purchase a fraudulent CDO investment that is now worthless. In its complaint, plaintiff raises causes of action sounding in (1) rescission; (2) common-law fraud; (3) conspiracy to defraud; (4) aiding and abetting fraud; (5) fraudulent conveyance; and (6) unjust enrichment. The rescission claims are asserted against MLPFS and MLI only, while the remaining claims are asserted against all defendants.
Merrill defendants and 250 Capital moved to dismiss the action pursuant to CPLR 3211 (a) (1) and (7) and 3016 (b). The motion court dismissed the claims of conspiracy to defraud, aiding and abetting fraud, fraudulent conveyance and rescission. The motion court also dismissed the common-law fraud and unjust enrichment claims asserted against MLI and Merrill Lynch. The motion court, however, denied the dismissal of the common-law fraud claims and unjust enrichment claims against MLPFS and 250 Capital. Both plaintiff and defendants appealed from the part of the court’s order adversely affecting them.
We first examine defendants’ contentions. With regard to the fraud claims, defendants contend that plaintiff, who is a resident of Jersey in the Channel Islands, is time-barred from raising the fraud claims pursuant to New York’s borrowing statute (CPLR 202) and Jersey law. A cause of action for fraud accrues where the loss was sustained (Prefabco, Inc. v Olin Corp., 71 AD2d 587, 588 [1st Dept 1979]). Generally, the loss is sustained “where the investors resided” (Matter of Smith Barney, Harris Upham & Co. v Luckie, 85 NY2d 193, 207 [1995], cert denied 516 US 811 [1995]). However, a court can consider all relevant factors in determining the situs of the loss, including “how and where plaintiff paid for the securities, where plaintiff maintained the trading account in which the loss was reflected, and the manner in which the securities were handled” (Grosser v Commodity Exch., Inc., 639 F Supp 1293, 1300 [SD NY 1986], affd 859 F2d 148 [2d Cir 1988]). Because there is an issue of fact as to where plaintiff sustained loss, the motion court correctly denied defendants statute of limitations motion, with leave to move for summary judgment later (see e.g. Oxbow Calcining USA Inc. v American Indus. Partners, 96 AD3d 646, 651 [1st Dept 2012]).
Defendants alternatively argue that the fraud claim should be dismissed because it is not sufficiently detailed. Generally, in a claim for fraud, a plaintiff must allege “a misrepresentation or a material omission of fact which was false and known to be *466 false by defendant, made for the purpose of inducing the other party to rely upon it, [and] justifiable reliance of the other party on the misrepresentation or material omission, and injury” (Lama Holding Co. v Smith Barney, 88 NY2d 413, 421 [1996]). Furthermore, “the circumstances constituting the wrong shall be stated in detail” (CPLR 3016 [b]; see also Lanzi v Brooks, 43 NY2d 778, 780 [1977] [“(CPLR 3016 [b]) requires only that the misconduct complained of be set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of’]).
In this case, the complaint describes the alleged fraudulent conduct as follows: “Auriga was one of a series of now-infamous deals, known as the ‘Constellation CDOs,’ that were initiated and designed by an undisclosed hedge-fund, Magnetar Capital LLC (‘Magnetar’), that was secretly placing massive short bets against the very same deals it was sponsoring. As with its other Constellation CDOs, Magnetar sponsored Auriga by purchasing the deal’s ‘equity’ tranche, which is typically the most junior long-position in a CDO and the hardest to sell. Magnetar, however, assumed the role of Auriga’s equity sponsor for the very purpose of creating a vehicle through which it could place a much larger short bet against hand picked collateral via credit default swaps (‘CDS’) that would yield huge pay-outs for Magnetar at the expense of Plaintiff and Auriga’s other long investors—when the deal defaulted.
“Without an equity sponsor, there could be no CDO. Thus, in order to ensure that its short bets would pay off, Magnetar conditioned its agreement to act as Auriga’s equity sponsor on Merrill allowing Magnetar to influence collateral selection and dictate key aspects of Auriga’s structure, and selling Magnetar both the equity and the CDOs at a discount. Merrill readily accepted, since without an equity investor the deal would not close and Merrill would not pocket the lucrative fees it stood to earn from the deal.
“Merrill was one of Magnetar’s favored partners, having arranged at least five Constellation CDOs (more than any other bank with whom Magnetar colluded) between June 2006 and March 2007 for a total issuance of over $7.5 billion. Auriga was the fourth one, and by the time it closed Merrill was well versed in the scheme. Merrill earned tens of millions of dollars in fees over a very short period of time arranging Constellation CDOs at Magnetar’s behest. Plaintiff, however, at the time it invested in Auriga had no way of knowing of Magnetar’s involvement or the true facts behind the deal—and none of these material facts were disclosed to Plaintiff. To the contrary, Defendants af *467 firmatively concealed from Plaintiff and other investors that Auriga had been designed to meet the specifications of an undisclosed hedge fund whose interests as a net-short investor were diametrically opposed to the deal’s success. Indeed, Magnetar’s short interests in Auriga were more than twice the size of its long interest. Thus, whereas long investors like Plaintiff needed Auriga to succeed for their investments to pay out, Magnetar—in collusion with Defendants—had stacked the deck so that Magnetar could reap massive profits from the failure of the deal.”
These factual allegations provide sufficient details to inform the Merrill defendants and 250 Capital of the alleged fraudulent conduct, namely that the CDO was secretly designed by an undisclosed hedge fund, Magnetar, which was secretly placing massive short bets against the very same deals it was sponsoring. Defendants, however, argue that plaintiff cannot establish the element of reasonable reliance (an element of both affirmative misrepresentation and concealment) as a result of the disclosures and disclaimers for the Auriga CDO. We cannot agree.
The offering circular states, “All or most of the Collateral Debt Securities Acquired by the Issuer . . . will be Acquired from a portfolio of Collateral Debt Securities selected by the Collateral Manager . . . .” If Magnetar rather than 250 Capital was doing the selecting, the statement in the offering circular was misleading. The identity of the person selecting the collateral was material: The offering circular says, “The performance of the portfolio of Collateral Debt Securities depends heavily on the skills of the Collateral Manager in analyzing and selecting the Collateral Debt Securities.” Furthermore, Magnetar’s interests were not the same as 250 Capital’s. The complaint alleges that “Magnetar’s short interests in Auriga were more than twice the size of its long interest,” so it had a vested interest in Auriga’s failure; hence, the assets that Magnetar “designated for inclusion . . . [in] the Auriga CDO [collateralized debt obligation] were riddled with high percentages of nonconforming loans and were much more likely to default than their credit ratings suggested.”
Under the circumstances, it cannot be said that the disclaimers and disclosures in the offering circulars preclude a claim of fraud on the ground of a prior misrepresentation as to the specific matter, namely that the CDO’s collateral had been carefully selected by an independent collateral manager, in the interests of the success of the deal and for the benefit of Auriga’s long investors. Whether it was reasonable for plaintiff to rely on the representation in the offering circular that 250 Capital *468 would select Auriga’s collateral is a factual matter that cannot be determined on a CPLR 3211 motion to dismiss (see e.g. Skillgames, LLC v Brody, 1 AD3d 247, 251 [1st Dept 2003]; Swersky v Dreyer & Traub, 219 AD2d 321, 328 [1st Dept 1996]).
Moreover, we agree with plaintiff that Supreme Court erred in dismissing the common-law fraud claims against Merrill Lynch and MLI. The motion court dismissed the fraud claims against these defendants on the ground that there are no specific allegations that they engaged in any fraudulent conduct. However, plaintiffs theory of fraud does not rest upon a single decisive event which manifestly demonstrates defendants’ wrongdoing, but on a series of interrelated events which, viewed as whole, portray the alleged fraudulent scheme. It is clear from the complaint that Merrill Lynch and MLI were key players integrally involved in the structuring and sale of Auriga to investors such as plaintiff. In essence, Merrill Lynch, through its affiliates, structured the CDO, was the initial purchaser of the securities, provided the initial financing, and acted as a counterparty by purchasing the CDS.
We find, however, that the unjust enrichment cause of action should have been dismissed because the CDO transaction was governed by written agreements. “The theory of unjust enrichment is one created in law in the absence of any agreement” (Basis Yield Alpha Fund [Master] v Goldman Sachs Group, Inc., 115 AD3d 128, 141 [1st Dept 2014]; see also Goldman v Metropolitan Life Ins. Co., 5 NY3d 561, 572 [2005]). Finally, contrary to plaintiff’s contention, the motion court properly dismissed the rescission cause of action because the complaint fails to allege the absence of a “complete and adequate remedy at law” (see Rudman v Cowles Communications, 30 NY2d 1, 13 [1972]).
Concur—Mazzarelli, J.P, Sweeny, Renwick, Freedman and Gische, JJ.