**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 27, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

# UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT
_____

LEHMAN BROTHERS HOLDINGS,
INC.,

        Plaintiff-Appellant,

v.

UNIVERSAL AMERICAN
MORTGAGE COMPANY, LLC,

        Defendant-Appellee.

_____

LEHMAN BROTHERS HOLDINGS,
INC.,

        Plaintiff-Appellant,

v.

UNIVERSAL AMERICAN
MORTGAGE COMPANY, LLC,

        Defendant-Appellee.

_____

LEHMAN BROTHERS HOLDINGS,
INC.,

        Plaintiff-Appellant,

v.

UNIVERSAL AMERICAN
MORTGAGE COMPANY, LLC,

No. 14-1180
(D.C. No. 1:13-CV-00091-REB-KMT)
(D. Colo.)

No. 14-1181
(D.C. No. 1:13-CV-00088-CMA-MEH)
(D. Colo.)

No. 14-1182
(D.C. No. 1:13-CV-00093-CMA-MJW)
(D. Colo.)

Defendant-Appellee.

_____

LEHMAN BROTHERS HOLDINGS, INC.,

Plaintiff-Appellant,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY,

Defendant-Appellee.

_____

LEHMAN BROTHERS HOLDINGS, INC., LLC,

Plaintiff-Appellant,

v.

UNIVERSAL AMERICAN MORTGAGE COMPANY, LLC,

Defendant-Appellee.

_____

AURORA COMMERCIAL CORP., as Successor by merger to Aurora Bank, FSB, f/k/a Lehman Brothers Bank, FSB,

Plaintiff-Appellant,

v.

STANDARD PACIFIC MORTGAGE, INC., a Delaware

No. 14-1212
(D.C. No. 1:13-CV-00087-CMA-MJW)
(D. Colo.)

No. 14-1356
(D.C. No. 1:13-CV-00092-WJM-BNB)
(D. Colo.)

No. 14-1475
(D.C. No. 1:12-CV-03138-WJM-KLM)
(D. Colo.)

2

corporation, f/k/a Family Lending
Services, Inc.,

      Defendant-Appellee.

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **BACHARACH**, Circuit Judges.
_____

This appeal involves fifteen residential mortgages bought by Lehman Brothers Bank, FSB. This bank, which later changed its name to Aurora Commercial Corp., conveyed five of the loans to Lehman Brothers Holdings, Inc. and retained the other ten. Aurora and Lehman Holdings sued,[1] claiming that the sellers had breached warranties about the quality of the loans.

The overarching issue in this consolidated appeal involves timeliness. In our view, the suits are untimely under the statute of limitations. Timeliness turns on three sub-issues:

---

[*]    This order and judgment does not constitute binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But this order and judgment may be cited if otherwise appropriate under Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1]    Lehman Holdings and Aurora filed suit in the District of Colorado, alleging that a substantial part of the underlying events took place in Colorado. Lehman Holdings stated that its residential mortgage loss recovery program is based in Colorado, and Aurora stated that the agreements were to be performed in Colorado and the loans were serviced there.

1. **Does New York's borrowing clause apply? (Yes)** New York's borrowing clause applies if the parties agreed to use New York law, the claimant did not reside in New York, and the claim accrued outside of New York. In our view, the borrowing clause applies because the agreements effectively call for application of the borrowing clause, Lehman Bank is considered a resident of Delaware, and Lehman Bank's injury was suffered in Delaware. Under the borrowing clause, we must apply Delaware's period of limitations, which is three years from accrual of the cause of action.

2. **Did the claims accrue more than three years before Aurora and Lehman Holdings sued? (Yes)** Because the Delaware limitations period is three years, we must decide if the claims accrued more than three years before Aurora and Lehman Holdings sued. We conclude they did. All the claims accrued in 2006 and 2007 (when Lehman Bank bought the fifteen loans) even though (1) Lehman Holdings and Aurora later demanded that the sellers cure the losses sustained from the loans and (2) Lehman Holdings had to reimburse third parties because of the loan defects. Though the claims accrued in 2006 and 2007, Aurora and Lehman Holdings waited until 2011 and 2012 to sue on the fifteen loans. Thus, the suits would ordinarily be time-barred.

3. **Did the seller agree to extend the limitations period from three years to twenty years? (No)** Aurora argues that the seller agreed to extend the limitations period to twenty years. We reject this argument. Delaware law permits the parties to agree to extend the limitations period by postponing the accrual date. But the parties did not agree to postpone the accrual date. Thus, Aurora's limitations period was three years, not twenty years.

## I. The Loan Sales and the Lawsuits

All of the claims were brought against two originators of home loans: Standard Pacific Mortgage, Inc. and Universal American Mortgage Company, LLC. In 2004, Standard Pacific agreed to sell residential mortgage loans to Lehman Bank. Similarly, in 2005 and 2006, Universal

4

American agreed to sell residential mortgage loans to Lehman Bank. Each agreement was memorialized in two documents: a Loan Purchase Agreement and a Seller's Guide. The Loan Purchase Agreements incorporated the Seller's Guides.

## A.    Lehman Holdings' Claims

One of the appellants, Lehman Holdings, appeals from dispositions on claims involving five loans that Universal American sold in 2006 to Lehman Bank. Lehman Bank sold the loans and assigned the contractual rights to Lehman Holdings, which then sold the loans to either the Federal Home Loan Mortgage Corporation (commonly known as Freddie Mac) or the Federal National Mortgage Association (commonly known as Fannie Mae).



Freddie Mac and Fannie Mae eventually determined that the five loans were unacceptable and demanded payment from Lehman Holdings. Lehman Holdings complied, then brought five suits in 2011 against Universal American for breach of contract. In each case, the district court

5

granted summary judgment to Universal American based on expiration of the period of limitations.

## B. Aurora's Claims

Aurora's suit is similar. Aurora bought ten loans from Standard Pacific in 2006 and 2007. (As noted above, Aurora was known at the time of purchase as Lehman Brothers Bank.) In November 2012, Aurora sued Standard Pacific for breach of contract. The district court granted Standard Pacific's motion to dismiss based on expiration of the limitations period.

## II. Standards of Review

This consolidated appeal is from (1) five orders granting summary judgment to Universal American on the claims by Lehman Holdings and (2) a single order granting Standard Pacific's motion to dismiss Aurora's claims. In reviewing these orders, we engage in de novo review. *See Albers v. Bd. of Cty. Cmm'rs of Jefferson Cty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014) (motion to dismiss); *In re Grandote Country Club Co., Ltd.*, 252 F.3d 1146, 1149 (10th Cir. 2001) (summary judgment motion).

To survive the motion to dismiss, Aurora had to plead facts sufficient "to state a 'claim to relief that is plausible on its face.'" *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In considering the complaint, we must accept as true all of Aurora's well-pleaded allegations and

construe them in the light most favorable to Aurora. *Albers*, 771 F.3d at 700.

To survive the motions for summary judgment, Lehman Holdings had to "come forward with 'specific facts showing that there [was] a genuine issue for trial.'" *In re Grandote*, 252 F.3d at 1150 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). We draw factual inferences in favor of Lehman Holdings as the nonmovant. *See id.* at 1149.

### III. New York's borrowing clause applies, subjecting the plaintiffs' claims to the limitations period of both New York and Delaware.

Universal American and Standard Pacific argue that the parties' agreements require application of the New York borrowing clause. We agree. Under the borrowing clause, the plaintiffs had to satisfy the limitations period in both Delaware and New York.

#### A. The parties' agreements call for application of the New York borrowing clause.

The threshold issue is the applicability of New York's borrowing clause. Lehman Holdings and Aurora contend that the borrowing clause does not apply because the parties declined to select New York's choice-of-law rules. In our view, however, the parties' agreements incorporated New York's borrowing clause. Thus, we conclude that the New York borrowing clause applies.

7

The Loan Purchase Agreements and Seller's Guides include choice-of-law provisions in all of the sales to Lehman Bank. The Loan Purchase Agreements provide:

> Governing Law. This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.

*E.g.*, Lehman Holdings' App'x at 26. Similarly, the Seller's Guides provide:

> GOVERNING LAW
> The Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws.

*E.g.*, *id.* at 126.

The agreements generally call for application of New York law, and New York's statute of limitations would ordinarily give Lehman Holdings and Aurora six years to sue. N.Y. C.P.L.R. § 213 (McKinney); *see State of New York v. Ehasz*, 436 N.Y.S.2d 387, 388-89, 80 A.D.2d 671, 671 (N.Y. App. Div. 1981).[2] But New York's statute of limitations contains a borrowing clause. *See* N.Y. C.P.L.R. § 202 (McKinney).

---

[2] Because the district court had jurisdiction through diversity of citizenship, the forum state's choice of law rules were controlling. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). The forum state

8

Universal American and Standard Pacific invoke this borrowing clause, arguing that it would trigger Delaware's statute of limitations, which would give Lehman Holdings and Aurora only three years to sue. *See* Del. Code Ann. tit. 10, § 8106(a). Lehman Holdings and Aurora disagree, reading the Seller's Guides to prohibit application of the borrowing clause. We agree with Standard Pacific and Universal American: The Loan Purchase Agreements take precedence over the Seller's Guides, and the Loan Purchase Agreements' choice of law provisions encompass the borrowing clause.

The Loan Purchase Agreements incorporate the Seller's Guides, but state that "[i]n the event of any conflict, inconsistency or discrepancy between any of the provisions of the Seller's Guide and any of the provisions of this [Loan Purchase] Agreement, the provisions of this [Loan Purchase] Agreement shall control and be binding upon [Lehman Bank] and the Seller." *E.g.*, Lehman Holdings' App'x at 25. Thus, if the Seller's Guides and the Loan Purchase Agreements are inconsistent, the Loan Purchase Agreements would control.

As a result, we are guided by the terms in the Loan Purchase Agreements. These terms implicitly include selection of New York's

---

was Colorado for each suit. Colorado law provides that when a claim is based on another state's substantive law, that state's period of limitations is controlling. Colo. Rev. Stat. § 13-82-104.

limitations period by stating that the "obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York." *E.g.*, *id.* at 26. This language includes New York's limitations period because the length of time to sue is something that affects the parties' "rights and remedies." *See Tanges v. Heidelberg N. Am., Inc.*, 710 N.E.2d 250, 253 (N.Y. 1999) (stating that New York's statutes of limitations suspend the remedy rather than affect the underlying right). Thus, when the parties chose New York's law on remedies, their choice effectively included New York's period of limitations, which in turn included New York's borrowing clause. *See Muto v. CBS Corp.*, 668 F.3d 53, 58 (2d Cir. 2011) ("[T]he presumption is strong that federal courts should apply state statutes of limitations, including their borrowing statutes, as integrated wholes.").

Lehman Holdings and Aurora disagree, pointing out that the Seller's Guides state that the parties' obligations, rights and remedies shall be governed by New York's "substantive law . . . without regard for the principles of conflict of laws." *E.g.*, Lehman Holdings' App'x at 126. In the view of Lehman Holdings and Aurora, the Seller's Guides' reference to New York's "substantive law" excludes the borrowing clause. If that is true, however, we would need to disregard the Seller's Guides because the Loan Purchase Agreements state that they would control "[i]n the event of

10

any conflict" with the Seller's Guides. *E.g.*, *id.* at 25.[3] And the Loan Purchase Agreements select New York law without the conflict-of-laws limitation. As a result, the Loan Purchase Agreements require application of the borrowing clause.[4]

**B.    The borrowing clause requires application of the limitations periods of both New York and Delaware.**

Because the borrowing clause applies, we must decide whether to apply the limitations period for (1) New York or (2) both New York and Delaware. Lehman Holdings and Aurora argue that the borrowing clause requires application of New York's limitations period; Universal American and Standard Pacific argue that the borrowing clause requires application of both limitations periods, effectively requiring adherence to Delaware's shorter period of limitations. We agree with Universal American and Standard Pacific.

---

[3]    Universal American and Standard Pacific argue that the Seller's Guides are consistent in supporting application of New York's borrowing clause. We need not address this argument. For the sake of argument, we assume that Lehman Holdings and Aurora are correct in their interpretation of the Seller's Guides. Even with this assumption, we would need to apply New York's borrowing clause.

[4]    Lehman Holdings and Aurora argue that (1) New York's borrowing clause is designed to prevent forum shopping by nonresidents suing in New York and (2) forum shopping is not involved here. But we are constrained by the unambiguous language in the Loan Purchase Agreements. *See R/S Assocs. v. New York Job Dev. Auth.*, 771 N.E.2d 240, 242-43 (N.Y. 2002).

11

**1. We apply Delaware's statute of limitations, as well as New York's, if two conditions are met.**

New York's borrowing clause requires application of the statute of limitations in both New York and another state if two conditions are met:

1. The plaintiff was not a resident of New York when the cause of action accrued.

2. The cause of action accrued in a state other than New York.

N.Y. C.P.L.R. § 202 (McKinney). In our view, both conditions are satisfied as a matter of law, requiring us to apply the shorter of the limitations periods in Delaware and New York.

**2. Lehman Bank (Aurora) is the entity whose residency we must consider.**

Before we can address the first condition, which involves residency, we must decide whose residency to consider. In our view, the claims brought by both Aurora and Lehman Holdings turn on the residency of Lehman Bank (now Aurora).

For Aurora's claims, the answer is simple. Aurora never assigned any of the ten loans that are the subject of its suit. Thus, the residency of Lehman Bank controls for Aurora's claims.

Lehman Bank's residency also controls for the claims brought by Lehman Holdings. Lehman Holdings argues that in four of the five district court cases, the court should have focused on Lehman Holdings' residency

rather than Lehman Bank's.[5] We disagree because Lehman Holdings cannot acquire greater rights than its assignor (Lehman Bank). Instead, as an assignee, Lehman Holdings steps into the shoes of its assignor, Lehman Bank. *U.S. Bank Nat'l Ass'n v. Denisco*, 949 N.Y.S.2d 309, 312, 96 A.D.2d 1659, 1661 (N.Y. App. Div. 2012). As a result, the issue is which state's limitations period would apply if the claim had been brought by Lehman Bank rather than Lehman Holdings. To answer that question, we must determine where Lehman Bank "resided" when it bought and resold the loans.

Lehman Holdings insists that its own residency is controlling, pointing out that Lehman Holdings assumed all of the rights and remedies previously conveyed to Lehman Bank. On this basis, Lehman Holdings argues that it was injured by Universal American's alleged breach, allowing Lehman Holdings to sue on its own as purchaser (and not merely as assignee) of the agreements.

This argument is invalid. The breaches of the contractual representations and warranties occurred when they were owed to Lehman Bank, not Lehman Holdings. It was not until 2011, years after the losses were allegedly sustained, that any of the contractual rights were assigned

---

[5]    In the fifth district court case (No. 13-cv-91), Lehman Holdings conceded that the court should focus on the state of Lehman Bank's residence. Thus, Lehman Holdings does not challenge the district court's focus on Lehman Bank's residence in No. 13-cv-91.

13

to Lehman Holdings. Thus, when the causes of action accrued, the alleged victim would have been Lehman Bank, not Lehman Holdings. *See ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 596-97 (2015) (holding that a breach of a representation or warranty occurs at the time of contract execution, regardless of any subsequent failure to observe contractual terms requiring repurchase or cure of that breach); *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS, 2012 WL 3201139, at *6, *17 (Del. Ch. Aug. 7, 2012) (unpublished) (same). Lehman Holdings can sue only as an assignee.

Lehman Holdings disagrees, characterizing itself as an assignee of the entire agreement, allowing it to sue Universal American in its own shoes rather than in the shoes of Lehman Bank. This characterization rests on semantics rather than substance. Lehman Holdings acquired its interests from Lehman Bank, but Lehman Holdings is not suing for breaches committed after it acquired the loans. Instead, Lehman Holdings is suing for breaches allegedly committed against Lehman Bank, the assignor. The alleged breaches preceded Lehman Holdings' acquisition of any contract rights.

In these circumstances, Lehman Holdings can assert claims only as the assignee of rights conveyed by Lehman Bank. Thus, Lehman Holdings cannot "stand in a better position than that of" Lehman Bank. *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416 (N.Y. 2010); *see*

14

Restatement (Second) of Contracts § 336 (1981) ("By an assignment the assignee acquires a right against the obligor only to the extent that the obligor is under a duty to the assignor.").

For these reasons, we must focus on the residency of Lehman Bank for all of the claims.

### 3. Lehman Bank was a Delaware resident.

Under the first condition of the New York borrowing clause, we must determine Lehman Bank's residency when the cause of action accrued. New York law defines residency based on the entity's principal place of business. Lehman Bank was a federal savings and loan association at the time of the transactions; and under federal law, a federal savings and loan association's home office ordinarily constitutes the principal place of business. Because Lehman Bank's home office was in Delaware, Lehman Bank's principal place of business was (by definition) also in Delaware. Thus, Lehman Bank's residency was in Delaware when it bought and resold the loans.

### a. Under New York law, Lehman Bank's residency was in Delaware.

The New York borrowing clause requires us to determine whether "the cause of action accrued in favor of a [New York] resident." N.Y. C.P.L.R. § 202 (McKinney). Lehman Holdings and Aurora acknowledge that in determining Lehman Bank's residency, we focus on its principal

15

place of business. *See* Lehman Holdings' Opening Br. at 22; Lehman Holdings' Reply Br. at 26-27; Aurora's Opening Br. at 10-13; *see also Groshut v. Kinetophote Corp.*, 157 N.Y.S. 312, 314 (N.Y. App. Div. 1916) (concluding that a domestic corporation resides, for purposes of the New York Civil Procedure Rule § 2458, where the corporation has its principal place of business). Thus, to determine Lehman Bank's residency when the loans were sold, we must determine where Lehman Bank had its principal place of business.

Lehman Bank was a federal savings and loan association, which is a creature of federal law. *See* Home Owners' Loan Act, 12 U.S.C. §§ 1461-70 (providing for the establishment of federally chartered savings and loan associations). Based on federal law, a federal agency established comprehensive regulations governing federal savings and loan associations like Lehman Bank. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 144-45 (1982) (stating that the Federal Home Loan Bank Board has promulgated "regulations governing 'the powers and operations of every Federal savings and loan association from its cradle to its corporate grave'" (quoting *People v. Coast Fed. Sav. & Loan Ass'n*, 98 F. Supp. 311, 316 (S.D. Cal. 1951))).

New York law provides no clear standard for determining the principal place of business of a federal savings and loan association. In other contexts, however, New York courts have addressed provisions of

16

New York law that mirror terms also used by federal law. In those contexts, New York courts have defined the state-law terms in accordance with the parallel provisions of federal law. *See Delese v. Tax Appeals Tribunal of N.Y.*, 771 N.Y.S.2d 191, 194, 3 A.D.3d 612, 613 (N.Y. App. Div. 2004) ("The Department's use of federal regulations to interpret a state statute based on federal law was proper."); *People v. Huggins*, 541 N.Y.S.2d 1016, 1020 (N.Y. Sup. Ct. 1989) (adopting a federal definition of a parallel term in state evidentiary law).

In our view, New York would do the same here. New York uses a term, "principal place of business," that also exists in federal law. Here, the issue involves the principal place of business for a federally created entity, a federal savings and loan association. New York courts would likely rely on federal law to define the principal place of business of a federally created entity.

Federal regulatory law provides useful guidance, indicating that the principal place of business is where the savings and loan association establishes its home office. Under federal regulations, a savings and loan association's home office takes on legal significance: All of the savings and loan association's operations "are subject to direction from the home office." 12 C.F.R. § 545.91(a). As a result, federal regulations ordinarily define the bank's home office as its principal place of business. *See* 12

17

C.F.R. § 1263.18(b) (creating a default rule designating the home office as the principal place of business).[6]

In district court and on appeal, Lehman Holdings and Aurora admitted that Lehman Bank's home office had been in Delaware when the loans were bought and resold. Lehman Holdings' App'x at 782, 1492, 2107, 3062, 3733; Aurora's App'x at 11; Aurora's Opening Br. at 11; Lehman Holdings' Opening Br. at 23. Because Lehman Bank's home office was in Delaware, Lehman Bank's principal place of business also had to be in Delaware.

It is true that we are construing the phrase "principal place of business" under New York law, not federal law. Invoking New York law, Lehman Holdings argues that a fact issue exists, pointing to evidence that most of Lehman Bank's executive officers were in New York and that the board of directors met most frequently in New York. In other circumstances, the location of the principal place of business might raise a fact issue under New York law. But for federally chartered savings and loan associations, the term "principal place of business" is a term of art heavily influenced by federal regulations. *See Lehman Bros. Bank, FSB v. State Bank Comm'r*, 937 A.2d 95, 103 (Del. 2007) (holding that even though Lehman Bank's executive officers were in New York and its board

---

[6] This provision has been renumbered. When the loans were sold, this provision appeared as 12 C.F.R. § 925.18(b).

of directors met exclusively in New York, Lehman Bank had its "principal office" in Delaware rather than New York because the term "principal office" is a term of art); *accord Cortes v. Am. Airlines, Inc.*, 177 F.3d 1272, 1298 (11th Cir. 1999) (referring to the "principal place of business" as a "term of art").

Regardless of where Lehman Bank's executives resided or met, all of Lehman Bank's actions were "subject to direction from the home office" in Delaware. 12 C.F.R. § 545.91(a). With all of the bank's actions subject to direction from the home office in Delaware, any reasonable fact-finder would have to conclude that Lehman Bank's principal place of business was in Delaware. *See Lehman Bros. Bank, FSB*, 937 A.2d at 103-104 (holding that Lehman Bank had its principal office in Delaware, rather than New York, based in part on Lehman Bank's establishment of its home office in Delaware). As a result, Lehman Bank is considered a resident of Delaware.

**b.    Aurora forfeited and waived its arguments to the contrary.**

Aurora makes two arguments to the contrary:

1.    Under 12 C.F.R. § 1263.18(c), a federal savings and loan association can designate its principal place of business as a location other than the home office.

2.    Though Aurora belongs to the Pittsburgh Federal Home Loan Bank, a federal savings and loan association can be a member of a Federal Home Loan Bank for a district adjoining the district of its principal place of business.

19

But Aurora did not preserve these arguments in district court and failed to properly present them here.

Aurora forfeited the arguments by failing to make them in district court. *See George v. United States*, 672 F.3d 942, 947 (10th Cir. 2012). We would ordinarily apply the plain-error standard, but Aurora failed to argue for plain error. As a result, we decline to consider the new arguments. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128, 1130-31 (10th Cir. 2011).

Aurora not only forfeited the arguments but also waived them by failing to raise these arguments until the reply brief, where Aurora relegated the arguments to a footnote. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief."); *United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

## 4. The claims accrued in Delaware.

New York's borrowing clause applies only if the claims accrued outside of New York. Relying on this condition, Aurora argues that the claims accrued in New York rather than Delaware.[7] We disagree.

---

[7] Lehman Holdings does not raise this argument on appeal.

In New York, economic injuries ordinarily accrue "where the plaintiff resides and sustains the economic impact of the loss." *Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010) (quoting *Global Fin. Corp. v. Triarc Corp.*, 715 N.E.2d 482, 485 (N.Y. 1999)). Under this principle, Aurora presumptively sustains the economic loss at its place of residence. *See Gorlin v. Bond Richman & Co.*, 706 F. Supp. 236, 240 (S.D.N.Y. 1989) ("For purposes of the New York borrowing statute, a cause of action accrues where the injury is sustained. In cases involving economic harm, that place is normally the state of plaintiff's residence."); *Global Fin. Corp.*, 715 N.E.2d at 486 (stating a preference for "a rule requiring the single determination of a plaintiff's residence" as dispositive of the place of accrual, rather than "a rule dependent on a litany of events relevant to the 'center of gravity' of a contract dispute"). Because Aurora resided in Delaware, its claim accrued there, too.

When considering residency in a case involving securities trading, an intermediate appellate court has considered other factors. *Loreley Financ. (Jersey) No. 28, Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 985 N.Y.S.2d 499, 501-02, 117 A.D.3d 463, 465 (N.Y. App. Div. 2014). These factors included "how and where plaintiff [had] paid for the securities, where plaintiff [had] maintained the trading account in which the loss was reflected, and the manner in which the securities [had been] handled." *Id.*

21

But New York's highest court has not adopted these factors. Instead, that court has adhered to its general rule presuming that economic injury is sustained wherever the company has its principal place of business. *See Portfolio Recovery Assocs., LLC v. King*, 927 N.E.2d 1059, 1061 (N.Y. 2010). That was in Delaware.

**5.  Under Delaware law, the limitations period is three years.**

Under the borrowing clause, we must apply the shorter of the limitations periods in New York and Delaware. The parties agree that Delaware's three-year period of limitations is shorter than New York's. *See* 10 Del. Code Ann. § 8106(a); *see also Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764, 768 (Del. 2013) ("[A] breach of contract action must be brought within three years from the date that the cause of action accrued."); *Scharf v. Edgcomb Corp.*, 864 A.2d 909, 911, 920 (Del. 2004) (applying § 8106's three-year period of limitations to an indemnification claim). As a result, we apply Delaware's three-year period of limitations.

**IV.  Because the claims accrued more than three years before the plaintiffs sued, the claims are time-barred under Delaware's period of limitations.**

Because the claims are subject to Delaware's three-year period of limitations, we must determine whether the causes of action had accrued more than three years before the plaintiffs sued. Although the plaintiffs argue that the claims accrued within the three-year limitations period, we conclude that the claims accrued in 2006 and 2007. But Lehman Holdings

22

did not sue until 2011, and Aurora waited until 2012 to sue. Thus, all of the claims are untimely under Delaware's statute of limitations.

### A. Because the claims brought by Aurora and Lehman Holdings accrued in 2006 and 2007, they are time-barred under Delaware's three-year limitations period.

To determine whether the claims preceded the suits by more than three years, we must first consider when the claims accrued. *See Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 967 N.E.2d 1187, 1190 (N.Y. 2012) ("[T]he statute of limitations begins to run when a cause of action accrues."). We conclude that the claims accrued when the alleged breaches took place in 2006 and 2007, rendering the claims time-barred under the Delaware statute of limitations.

Aurora and Lehman Holdings pleaded a right to indemnity based on causes of action for breach of contract and breach of express warranty. For both types of claims, Aurora and Lehman Holdings allege harm from breaches of the representations and warranties contained in the Loan Purchase Agreements and refusal to repurchase the loans.

Under either New York or Delaware law, these claims accrued when the breaches took place (in 2006 and 2007) rather than when Universal American and Standard Pacific refused to repurchase the loans.[8] *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS,

---

[8]    Because both New York and Delaware law lead to the same result, we need not decide which state's law governs on accrual.

23

2012 WL 3201139, at *17, *23 (Del. Ch. Aug. 7, 2012) (unpublished) (noting that (1) "a cause of action for breach of representation accrues on the date of the contract's closing" because that is when the breach occurs and (2) "Delaware's statute of limitations for contract claims begins to run on the date of the breach, regardless of whether the plaintiff is ignorant of the cause of action"); *W. 90th Owners Corp. v. Schlechter*, 525 N.Y.S.2d 33, 35, 137 A.D.2d 456, 458 (N.Y. App. Div. 1988) (stating that a cause of action for breach of contract representations accrues when the breach took place).

Lehman Holdings and Aurora waited until 2011 or later to sue. Because Delaware's three-year limitations period began to run when the claims accrued in 2006 and 2007, all of the claims are time-barred under Delaware's three-year period of limitations.

## B. We reject the contrary arguments by Aurora and Lehman Holdings.

Aurora and Lehman Holdings argue that their claims accrued within three years of the suits. We disagree.

**1.    Aurora's claims accrued when the sales took place rather than when Standard Pacific refused to repurchase the loans.**

In its briefing, Aurora argued that its claims had accrued when Standard Pacific refused to repurchase the loans, not when the breaches had taken place. But this argument is unsupportable under either New York or Delaware law.

Before oral argument, the New York Court of Appeals decided *ACE Securities Corp. v. DB Structured Products, Inc.*, 25 N.Y.3d 581 (N.Y. 2015). In oral argument, Aurora's counsel conceded that under *ACE Securities*, the claims had accrued before Standard Pacific refused to repurchase the loans. *See ACE Secs. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 596-97 (N.Y. 2015) (rejecting the argument that "the cure or repurchase obligation transformed a standard breach of contract remedy, i.e. damages, into one that lasted for the life of the investment").

*ACE Securities* confirms that the refusal to repurchase the loans does not constitute a separate breach under New York law: "The cure or repurchase obligation is an alternative remedy, or recourse, for the [plaintiff], but the underlying *act* the [plaintiff] complains of is the same: the quality of the loans and their conformity with the representations and warranties." *Id.* at 596 (emphasis in original). Because the repurchase obligation involves only the remedy, it does not affect application of the statute of limitations. *Id.* at 597, 599; *see also Hahn Auto. Warehouse, Inc.*

25

*v. American Zurich Ins. Co.*, 967 N.E.2d 1187, 1191 (N.Y. 2012) ("[T]he statute of limitations . . . was triggered when the party that was owed money had the right to demand payment, not when it actually made the demand."). Otherwise we would be treating a contractual remedy—a right to repurchase by the seller—as if it were its own cause of action. *Lehman XS Trust, Series 2006–4N, by U.S. Bank Nat'l Ass'n v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 478 (S.D.N.Y. 2014).

The same is true under Delaware law. In Delaware, a claim accrues at the time of the alleged unlawful act, not when the plaintiff suffers an injury. *Wal–Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004). Thus, if a contract imposes repurchase or cure obligations on the seller and the seller fails to repurchase or cure on demand, the claim would still accrue as soon as the defendant breaches the underlying representations and warranties. *See, e.g.*, *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, No. 5140-CS, 2012 WL 3201139, at *6, *17 (Del. Ch. Aug. 7, 2012) (unpublished) (holding that when the representations and warranties were made on the date of closing, the statute of limitations began to run on that date even though the contract imposed cure and repurchase obligations on the defendant).

**2.  Lehman Holdings' claims accrued when the sales took place rather than when a third party was paid.**

Lehman Holdings argues that its claims accrued within three years. For this argument, Lehman Holdings relies on two points:

1.  It pleaded indemnity claims.

2.  Indemnity claims are governed by accrual rules that differ from those involving contract claims.

We disagree with the first point: Lehman Holdings pleaded breach of contract, rather than indemnity; thus, Lehman Holdings' claims accrued at the closing of the sales.

The plaintiff's choice of a cause of action affects not only the substance of the remedies available, but also the application of the limitations period:

> Where a suit invokes several causes of action, each is subject to a distinct statute of limitations; thus, distinct accrual periods should apply as to each cause of action. *See King v. Otasco, Inc.*, 861 F.2d 438, 441 (5th Cir. 1988). This is true even if the causes of action are derived from a single event. *Id.*

*Tiberi v. Cigna Corp*, 89 F.3d 1423, 1428 (10th Cir. 1996).

New York courts recognize that a claim for indemnification is distinct from a claim for breach of contract.[9] For example, in *Varo, Inc. v. Alvis PLC*, 691 N.Y.S.2d 51, 261 A.D.2d 262 (N.Y. App. Div. 1999), the New York Supreme Court Appellate Division distinguished between claims

---

[9]  We focus here on New York law because the Loan Purchase Agreements require application of New York law.

involving breach of warranty and indemnification. *Varo, Inc.*, 691 N.Y.S.2d at 55, 261 A.D.2d at 264-65. Explaining this distinction, the court said that the plaintiff's first cause of action involved indemnification because "[t]he pleadings characterize the action as one for contractual indemnity, and the amended complaint itself alleges" a failure to indemnify. *Id.*

In contrast, Lehman Holdings' amended complaints characterize the actions as suits for breach of contract. For example, each amended complaint identifies a single cause of action, labeled "Breach of Contract." Lehman Holdings' App'x at 22, 928, 1606, 2274, 3229. Similarly, the prayers for relief request "all damages arising from or relating to Universal [American's] breaches of contract" and "an Order of this Court declaring that Universal [American] is required to compensate Lehman immediately for all actual and consequential damages resulting from Universal [American's] breaches of the Representations, Warranty, and Covenant provisions of the Agreement and Seller's Guide." *E.g.*, *id.* at 23, 929. And in moving for summary judgment, Lehman Holdings expressly characterized its claim as one for breach of contract. For example, Lehman Holdings argued:

> As a result of any one of the various loan defects, [Universal American] breached its representations regarding the quality of the loan, the veracity of the loan documents, and compliance with the underwriting guidelines. Consequently, [Lehman Bank] did not receive the product for which it had

28

> purchased in reliance upon [Universal American's] representations. [Lehman Bank] received a product of lesser value and greater risk. Accordingly, [Universal American] breached the Agreement. [Universal American] also refused [Lehman Holdings'] demands for repurchase and indemnification. These facts establish a breach of the parties' unambiguous contract and that [Lehman Holdings] is due judgment as a matter of law.

*Id.* at 956 (Lehman Holdings' argument for partial summary judgment in No. 13-cv-87-CMA-MJW); *see also id.* at 3472 (virtually identical quotation by Lehman Holdings in its motion for partial summary judgment in No. 13-cv-92-WJM-BNB); *id.* at 160 (virtually identical quotation by Lehman Holdings in its motion for partial summary judgment in No. 13-cv-91-REB-KMT); *id.* at 1621 (Lehman Holdings arguing in its motion for partial summary judgment in No. 13-cv-93-CMA-MJW that "[t]his is a straightforward breach of contract action arising from the sale of a defective or non-conforming loan by a loan originator to an investor"); *id.* at 2290 (identical argument by Lehman Holdings in its motion for partial summary judgment in No. 13-cv-88-CMA-MEH).

In its five amended complaints and motions for partial summary judgment, Lehman Holdings referred to indemnification only as one of the ways that Universal American breached the contract, stating that the breaches consisted of failure to repurchase the loans "and/or fail[ure] to indemnify Lehman for its losses." *E.g.*, *id.* at 22. But Lehman Holdings never asserted indemnification as a cause of action distinct from the cause

29

of action for breach of contract. For example, in none of the five amended complaints is there any mention of Freddie Mac, Fannie Mae, or any payment by Lehman Holdings to a third party.

Through the amended complaints and summary judgment briefing, Lehman Holdings presented the claim in district court solely as one for breach of contract, with indemnity as a remedy rather than a distinct cause of action. As a result, Lehman Holdings cannot avoid summary judgment by recasting its contract claim as an indemnity claim. *See Maldonado v. City of Altus*, 433 F.3d 1294, 1314 (10th Cir. 2006) (declining to consider a theory newly presented in the plaintiffs' responses to summary judgment because the theories had not appeared in the complaints), *overruled on other grounds as recognized by Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1171 n.2 (10th Cir. 2006).

Lehman Holdings downplays the absence of an indemnity claim in the amended complaints, arguing that Universal American was not prejudiced by the absence of allegations involving liability to a third party. This contention confuses the issue. Universal American has not argued prejudice; it argues that Lehman Holdings pleaded indemnity as a remedy for breach of contract rather than as a "stand-alone" legal theory. We agree. Lehman Holdings cannot plead one theory to the district court and urge reversal on an entirely different theory. *See id.*

30

Lehman Holdings not only deviated from the contract claim pleaded in the amended complaints but distorted the nature of a true indemnity claim. An "indemnity claim is a separate substantive cause of action, independent of the underlying wrong." *McDermott v. City of New York*, 406 N.E.2d 460, 462-63 (N.Y. 1980). In an indemnity claim, the plaintiff alleges that the defendant owed a duty to a third party rather than to the plaintiff itself:

> The gravamen of an indemnity claim is not that the defendant has breached some duty of care which it owes directly to the plaintiff, but rather that they both owe a duty to some third party and that because of defendant's negligence or wrongful conduct the plaintiff has been held legally liable and cast in damages to the third party. It is the equitably imposed obligation which the actual wrongdoer owes to indemnify the other who has, without fault on its part, become legally liable and cast in damages to a third party by reason of that wrongdoing that is the only critical duty vis-a-vis plaintiff and defendant in an indemnity context.

*City of New York v. Lead Indus. Ass'n, Inc.*, 644 N.Y.S.2d 919, 923-24, 222 A.D.2d 119, 126-27 (N.Y. App. Div. 1996) (per curiam).

An indemnity claim, like any other, requires proof of a harm. *McCabe v. Queensboro Farm Prods., Inc.*, 239 N.E.2d 340, 342 (N.Y. 1968). The harm arises from the plaintiff's payment to an injured third party rather than injury to the plaintiff itself. *See, e.g.*, *Dutton v. Mitek Realty Corp.*, 463 N.Y.S.2d 471, 472, 463 A.D.2d 769, 770 (App. Div. 1983).

31

Applying these characteristics of indemnity claims, the Second Circuit Court of Appeals addressed a similar issue in *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986). There too the issue of timeliness turned on whether the claim involved breach of contract or indemnity. *Id.* at 350. Concluding that the claim involved breach of contract, rather than indemnity, the Second Circuit Court of Appeals held that the claim was time-barred under the limitations period for contract actions. *Id.* at 350-52.

The plaintiff (Yemen) bought grain from the defendant (Goodpasture), and the grain deliveries were late. *Id.* at 347-48. Because the deliveries were late, Yemen had to pay a third party (a shipowner) additional charges. *Id.* at 349. Yemen sued Goodpasture to recover the additional expenses within two years of paying the shipowner, but about eight years after Goodpasture had made the late deliveries. *Id.* at 348-49. The claim would be timely if it involved indemnity and untimely if it involved breach of contract. *Id.* at 350.

The Second Circuit characterized the claim as one for breach of contract, even though Yemen had not incurred any loss until it paid the additional charges to a third party (the shipowner). *Id.* at 351. But Goodpasture's alleged contractual duty ran to Yemen, not the shipowner. *Id.* As a result, Yemen's claim involved breach of contract, rather than a "legitimate indemnity claim," and the payments to the third party were

32

recoverable only as damages from Goodpasture's alleged breach of contract. *Id.* at 350-52.

In applying *Yemen*, we would regard Lehman Holdings' claims as causes of action for breach of contract even if Lehman Holdings had pleaded them as claims for indemnity. "An action 'does not become an action for indemnity merely because the pleader has so denominated it.'" *Id.* at 350 (quoting *Bunker v. Bunker*, 437 N.Y.S.2d 326, 328, 80 A.D.2d 817, 817 (N.Y. App. Div. 1981)).

Like Yemen, Lehman Holdings had to pay third parties (Freddie Mac and Fannie Mae). But again like Yemen, Lehman Holdings had to pay these third parties only because Universal American breached its contract with Lehman Holdings. Just as Goodpasture's contract created a duty to Yemen rather than the shipowner, Universal American's contract created a duty to Lehman Holdings rather than Freddie Mac or Fannie Mae. Thus, *Yemen* would require us to base accrual of the cause of action on the date of Universal American's breach of contract rather than the date of Lehman Holdings' payment to a third party.

* * *

As a result, we conclude that the causes of action accrued when Universal American and Standard Pacific sold the defective loans with the representations and warranties. These sales had closed in 2006 and 2007, more than three years before Aurora and Lehman Holdings brought suit in

33

2011 and 2012. Thus, all of the claims are presumptively time-barred under Delaware's three-year period of limitations.

**V.    Standard Pacific did not agree to extend the limitations period to 20 years.**

Aurora argues that Standard Pacific agreed to extend the limitations period to 20 years. This argument is invalid.

In applying New York's borrowing clause, we apply Delaware's tolling principles. *Smith Barney, Harris Upham & Co., Inc. v. Luckie*, 647 N.E.2d 1308, 1316 (N.Y. 1995), *abrogated on other grounds by Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52 (1995).

A Delaware statute, Title 10, Section 8106(c) of the Delaware Code, allows contracting parties to extend the applicable period of limitations up to 20 years: "[A]n action based on a written contract, agreement or undertaking involving at least $100,000 may be brought within a period specified in such written contract, agreement or undertaking provided it is brought prior to the expiration of 20 years from the accruing of the cause of such action." Del. Code Ann. tit. 10, § 8106(c). But Section 8106(c) does not apply here because the parties did not express an intent to take advantage of the law. Thus, the period of limitations remains three years and the claims are time-barred.

Aurora relies on *Bear Stearns Mortgage Funding Trust 2006-SL1 v. EMC Mortgage LLC*, No. 7701-VCL, 2015 WL 139731 (Del. Ch. Jan. 12,

2015) (unpublished), arguing that the court must infer an intent to extend the limitations period when the loan purchase agreement

- extends the seller's representations and warranties beyond the closing and

- provides that a cause of action accrued only upon the seller's discovery of a breach and failure to cure.

But the second requirement is absent because the Loan Purchase Agreements and Seller's Guides do not address accrual of the claim.

This type of omission did not exist in *Bear Stearns*, for there the contract provided an express condition precedent on accrual of a claim:

> Any cause of action . . . arising out of a breach by [EMC] of any representations and warranties made in this Section 7 shall accrue as to any Mortgage Loan upon (i) discovery of such breach by [EMC] or notice thereof by the party discovering such breach and (ii) failure by [EMC] to cure such breach, purchase such Mortgage Loan or substitute a qualifying Replacement Mortgage Loan pursuant to the terms hereof.

*Bear Stearns*, 2015 WL 139731, at *4. The court held that this provision created a "condition precedent to the running of the statute of limitations." *Id.* at *11. Such a condition precedent, together with the clause extending the representations and warranties, reflected a desire to extend the statute of limitations under § 8106(c). *Id.* at *15.

The court compared the accrual provision to "notice-and-repurchase" provisions, like the one in *Central Mortgage Co. v. Morgan Stanley Mortgage Capital Holdings LLC*, No. 5140-CS, 2012 WL 3201139 (Del. Ch. Aug. 7, 2012) (unpublished), which do not trigger § 8106(c). *Bear*

35

*Stearns*, 2015 WL 139731, at *11. The *Central Mortgage* provision gave the seller 60 days to cure any breach or repurchase the underlying asset, but did not make accrual of the claim contingent upon the buyer's attempt to exercise these pre-suit remedial rights:

> Within 60 days of the earlier of either discovery by or notice to the Seller of any such breach of a representation or warranty which materially and adversely affects the ownership interest of the Servicer in the [s]ervicing [r]ights related to any [m]ortgage [l]oan, the Seller shall use its best efforts to promptly cure such breach in all material respects, and if such breach cannot be cured, the Seller shall, at the Servicer's option, repurchase the [s]ervicing [r]ights affected by such breach at [a price set by a contractual formula].

*Cent. Mortg. Co.*, 2012 WL 3201139 at *6. The *Bear Stearns* court noted that the *Central Mortgage* provision "[t]echnically . . . was not a contractual provision addressing the accrual of claims, but rather a provision governing the Seller's obligation to cure." *Bear Stearns,* 2015 WL 139731, at *11-12.

In our case, the Loan Purchase Agreements more closely track the language in *Central Mortgage*, providing pre-suit remedies without mentioning accrual of the buyer's claims:

> In the event of a breach of any of the representations, warranties or covenants . . . Seller shall, at Purchaser's option, repurchase the related Mortgage Loan . . . . Any such repurchase shall occur no later than thirty (30) days after the earlier of the date on which Purchaser notifies Seller of such breach or the date on which Seller knows of such breach.
>
> . . . .

36

> All of Purchaser's remedies hereunder, including, without limitation, the repurchase obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and the indemnification with respect to any breach of a representation, warranty or covenant (or any other Event of Default), shall exist regardless of (i) the dates of Purchaser's discovery and notice to Seller of the breach and Purchaser's demand for any remedy and (ii) any limitation or qualification of a representation or warranty as being made "to Seller's knowledge" or "to the best of Seller's knowledge" or any similar qualification relating to the knowledge of Seller.

*E.g.*, Aurora's App'x at 124-25. Because the agreements do not address accrual of a cause of action, we cannot infer an intent to extend the limitations period. As a result, the three-year limitations period applies, and all of Aurora's claims are time-barred.

## VI. Conclusion

The district court did not err in granting Universal American's motions for summary judgment and Standard Pacific's motion to dismiss. Therefore, we affirm the judgments.

Entered for the Court

Robert E. Bacharach
Circuit Judge

37